O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:                     Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

This case is before the Court on the motion for summary judgment filed by defendant General Motors LLC ("Defendant" or "GM"). For the reasons set forth below, the Court GRANTS the motion in part and DENIES it in part.[1] The Court grants the motion as to Plaintiff's causes of action for violation of the Lanham Act and California's Unfair Competition Law and denies the motion as to Plaintiff's causes of action for infringement of the right of publicity.

## I.    INTRODUCTION

In 2010, Defendant used an image of Einstein as part of an advertisement ("Advertisement") for GM's 2010 Terrain vehicle. SUF ¶ 39. According to Defendant, its advertising agency licensed the image of Einstein from Getty Images (US), Inc. Getty Images engages in the business of licensing photographic imagery, and is now indemnifying Defendant. Motion at 1 n.1. The Advertisement appeared in one edition of one magazine – *People* Magazine's Sexiest Man Alive edition, dated November 30, 2009. SUF ¶ 40; SGI ¶ 40 (noting the edition is dated November 30, 2009, not December 2009).

Defendant contends that the Advertisement did not state or suggest that Einstein or Plaintiff endorsed the Terrain, or even contain a reference to Plaintiff. SUF ¶¶ 42-46. Further, Defendant asserts that no reasonable reader of the Advertisement would read it

---

[1] Docket No. 31.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

to imply that Einstein or Plaintiff endorsed the Terrain.  SUF ¶¶ 47, 48.  Plaintiff disputes
all of these facts, citing only to the Advertisement itself and arguing that the
Advertisement implies and creates the false impression that Einstein's estate and/or
Plaintiff were associated with the Advertisement.  SGI ¶¶ 42-48.  This is merely
argument.  Plaintiff cites to no evidence in the record to create a genuine dispute
regarding SUF ¶¶ 42-46.

   Plaintiff The Hebrew University of Jerusalem ("Plaintiff" or "HUJ") claims that
Dr. Albert Einstein ("Einstein") had a right of publicity that survived his death.  Plaintiff
claims that he transferred that right to Plaintiff through his will, thereby giving Plaintiff
exclusive control of Einstein's name and likeness.  Plaintiff asserts that Defendant's
unauthorized use of Einstein's image violated the Lanham Act (15 U.S.C. § 1125(a)),
California's Unfair Competition Law ("UCL"), California's right of publicity statute
(Civil Code § 3344.1), and the common law right of publicity.

   Defendant moves for summary judgment on all four of Plaintiff's causes of action.
The parties agree that New Jersey law governs the issue of whether Einstein had a
postmortem right of publicity.  Defendant's motion presents the following core issues: (1)
whether there is a postmortem right of publicity in New Jersey; (2) whether establishing
any such right depends on the decedent's lifetime exploitation of that right; (3) if so,
whether there is any evidence that Einstein exploited his right of publicity; and (4) if
Einstein had a postmortem right of publicity, whether Plaintiff inherited the right through
that Will.

## II.   LEGAL STANDARD ON SUMMARY JUDGMENT

   Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the
pleadings, the discovery and disclosure materials on file, and any affidavits show that
there is no genuine issue as to any material fact and that the movant is entitled to
judgment as a matter of law."  The moving party bears the initial burden of demonstrating
the absence of a "genuine issue of material fact for trial."  *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 256 (1986).  A fact is material if it could affect the outcome of the suit
under the governing substantive law.  *Id.* at 248.  The burden then shifts to the
nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party.  The moving party need not disprove the other party's case.  *See Celotex*, 477 U.S. at 325.  Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'"  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).  Summary judgment will be entered against the opposing party if that party does not present such specific facts.  *Id*.  Only admissible evidence may be considered in deciding a motion for summary judgment.  *Id.*; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255).  But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252.  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

## III.   FACTS

The following facts are undisputed, unless otherwise noted.  Einstein was the preeminent physicist of his time and remains world famous to this day.  Statement of Undisputed Facts ("SUF") ¶ 1.  Einstein died in 1955, while domiciled in New Jersey.  SUF ¶ 6.  He disposed of his property through a will ("Will") dated March 18, 1950.  SUF ¶ 7.  Plaintiff argues that it inherited Einstein's right of publicity through Article 13 of the Will, which in relevant part reads:

> I give and bequeath all of my manuscripts, copyrights, publication rights, royalties and royalty agreements, and all other literary property and rights, of any and every kind or nature whatsoever, to my Trustees hereinafter named, IN TRUST, to hold the same for a term measured by the lives of my secretary Helena Dukas, and my step-daughter, Margot Einstein . . . .  Upon the death of the said Helena Dukas and the said Margot Einstein, this trust shall terminate, and thereupon all funds or property, if any, still held in this trust, including all accrued, accumulated and undistributed income and all literary rights and property, shall pass and be distributed to Hebrew University . . . .

Doran Decl. Exh. E at 12-13, 14; SUF ¶ 8; SGI ¶ 8 (noting that the bequest includes the clause "of any and every kind and nature whatsoever").

It is undisputed that no other provision in the Will gives Plaintiff rights in Einstein's estate.  SUF ¶ 10.  Plaintiff argues that Article 14 of the Will, its residual clause, gave all unspecified property to Margot Einstein, and that Margot Einstein subsequently bequeathed the residue of her estate to HUJ (and 10 other charities) when she passed away in 1986.  SGI ¶ 10; Declaration of David G. Bayles Exh. 2 at 28-29.  Be that as it may, the Will itself does not give Plaintiff rights in Einstein's estate other than as provided for through the Trust.

The Will provided that the Trust would terminate upon the death of Helena Dukas and Margot Einstein, whereupon all property in the Trust would pass to Plaintiff.  SUF ¶

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

9.  In fact, the Trust was terminated by an agreement executed by Helena Dukas, Otto Nathan, Margot Einstein, and a representative of HUJ, effective January 1, 1982, conveying all property remaining in the Trust to Plaintiff.  SUF ¶ 30; SGI ¶ 30 (noting the Trust terminated on January 1, 1982, not in 1981 as per SUF ¶ 30); Doran Decl. Exh. I at 92-107 (copy of agreement).  Plaintiff apparently began asserting its right to control Einstein's name and likeness in 1985.  *See* Doran Decl. Exh. J at 127 (newspaper article noting HUJ had "hired an American licensing agent . . . to legally end the use of Einstein's name or face in TV, magazine and newspaper ads.").

Although Einstein lent his name to various charitable causes, there is no evidence that Einstein ever received any monetary compensation for his publicity rights or for the use of his publicity rights during his lifetime.  SUF ¶¶ 2, 4, 5.  Plaintiff nevertheless argues that Einstein "was aware of the value of his name and likeness" and exploited that value.  Statement of Genuine Issues ("SGI") ¶¶ 4, 5; Opposition ("Opp.") at 4.  Plaintiff gives four examples of what it contends are "numerous instances of [Einstein's] exploitation": (1) Einstein permitted an artist to create a portrait of him, which was "reproduced on postcards and widely marketed shortly after World War I"; (2) Einstein "deliberately exploited the publicity impact of his name to further causes he supported" (*e.g.*, education in what was then Palestine); (3) Einstein "agreed that Frigidaire could use his name and endorsement" to market a particular model of refrigerator, after Einstein made changes in the text and requested that Frigidaire "make use of this testimonial in a tactful way, that is, to use it in your brochures . . . ."; and (4) Einstein permitted "his name and image" to be used for an award bestowed by the Institute of Advanced Study honoring achievement in the natural sciences.  Opp. at 14-15.  While this evidence supports the proposition that Einstein was aware of, and even "exploited," his fame and influence during his lifetime, it nevertheless is not evidence that Einstein received *compensation* for his name or likeness, or for the use of his right to publicity in connection with any product, cause, or award.

The Will did not specifically designate Einstein's publicity or trademark rights for inclusion in the Trust.  SUF ¶¶ 11, 12.  Although this assertion is literally true, Plaintiff disputes this fact, arguing that through application of the doctrine of probable intent – a creature of New Jersey law – "the Will did designate . . . Einstein's publicity rights for inclusion in the Trust."  SUF ¶¶ 11, 12.  The Court addresses the application of this

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

doctrine in detail below, but here it is sufficient to note that the doctrine's function is to divine what the testator *would have* done, had he known of certain unforeseen circumstances. Hence, "probable" intent. Determining what Einstein would have done must be accomplished primarily through reference to what he actually did, especially by assessing the Will's language and the facts and circumstances surrounding its creation.

Although there is no genuine dispute about what the Will and Trust do not say, there *is* a genuine dispute concerning whether Einstein would have intended his right of publicity and trademark rights to be included in the Trust. Evidence in support of a finding that he did so intend includes the Will's language and the affidavits of Einstein's friend Otto Nathan ("Nathan") and attorney David Levy, who were involved in drafting the Will.

Einstein's friend, Nathan, helped draft the Will. SUF ¶ 19. In an affidavit ("Nathan Affidavit"), Nathan described the process of including the Trust in the Will. SUF ¶ 20. Nathan made the affidavit on December 15, 1982 "at the suggestion and upon the advice of my attorney, David J. Levy, Esq., to be held and used as circumstances may hereafter suggest, in relation to certain matters relating to the 'Literary Property' of the late Albert Einstein, at a time when I may be disabled, or no longer living, and the facts and evidence to be related [in the affidavit] may otherwise be unavailable." Declaration of Ambika Doran ("Doran Decl.") Exh. I at 46. Nathan died in 1987. *Dr. Otto Nathan, An Economist*, N.Y. Times, Jan. 30, 1987, *available at* http://www.nytimes.com/1987/01/30/obituaries/dr-otto-nathan-an-economist.html. The Nathan Affidavit refers to the Trust as the "Literary Property Trust" and notes that the "literary property" to which his affidavit relates "comprises the entire subject matter of the trust created by paragraph Thirteenth of the will of Albert Einstein . . . ." SUF ¶ 21; Doran Decl. Exh. I at 46, 47. Plaintiff disputes SUF ¶ 21, but apparently only to the extent that it does not include a complete recitation of the Trust property. SGI ¶ 21.

The Nathan Affidavit does not say that Einstein intended to include publicity or trademark rights in the Trust, rather than having them pass through the Will's residual clause. SUF ¶¶ 22-23. It is undisputed that the Trust property (as stated in the Will and repeated by Nathan) is "all [Einstein's] 'manuscripts, copyrights, publication rights, royalties and royalty agreements, and all other literary property and rights, of any and

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

every kind or nature whatsoever . . . ."  Doran Decl. Exh. I at 46-47.

Attorney David Levy drafted the Will.  SUF ¶ 24.  In an affidavit, Levy described his understanding of the process leading to the creation of the Trust.  SUF ¶ 25.  Levy made his affidavit on December 15, 1982 "in order to amplify and supplement [the affidavit of] Dr. Otto Nathan, . . . and like it to be held and preserved and utilized as circumstances may at any time require in relation to matters pertaining to the 'Literary Property' of the late Albert Einstein . . . ."  Doran Decl. Exh. I at 109.  Defendant claims that the Levy Affidavit in ¶ 15 "states that the overriding purpose of the Trust was preserving [Dr. Einstein's] manuscripts, papers, and other literary property."  SUF ¶ 26.  Plaintiff disputes this, arguing that the Levy Affidavit does not state in so many words that the purpose *of the Trust* itself was preserving his manuscripts, papers, and other literary property.  SGI ¶ 26.  This quibble is not material, for in discussing the terms of the will, Levy states that the degree to which the Trust's principal should be invaded for the "'care, comfort and welfare' of the individual beneficiaries" must be considered "in light of the patent and overriding purpose of preserving the manuscripts, papers and other literary property for the Hebrew University . . . ."  Doran Decl. Exh. I at 121.

Levy states in the conclusion of his affidavit that:

> The intent of Albert Einstein regarding the trust of his literary property *cannot be determined from particular words or phrases read literally and in disregard of the fundamental objectives and purposes pervading the document as a whole and which the will sought to achieve.*  The two dominant purposes here were, first, fulfillment of perceived obligations of reasonable support for his two charges (the individual beneficiaries) and second, the preservation of his Collected Works in perpetuity through the instrumentality of the Hebrew University and for the benefit of mankind.

Doran Decl. Exh. I at 122-23 (emphasis added).

What Levy does not say, in any event, is that Einstein intended to include his right

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

to publicity or his trademark rights in the Trust, rather than having them pass through the residual clause.  SUF ¶¶ 27, 28.  Nor is there evidence that the Trust received compensation for the use of Einstein's publicity rights after his death in 1955.  SUF ¶ 29.

　　The 1982 agreement terminating the trust describes the property conveyed to Plaintiff as "all of his [Einstein's] manuscripts, copyrights, publication rights, royalties and royalty agreements, and all of his other literary property <u>and rights</u>, of any and every kind or nature . . . ."  SUF ¶ 31; SGI ¶ 31.  (Emphasis added.)  The agreement does not specifically mention publicity rights or trademark rights.  SUF ¶¶ 32, 33.  Although Plaintiff concedes that the words "publicity rights" do not appear in the 1982 agreement, Plaintiff disputes SUF ¶¶ 32 and 33 on that basis that the property conveyed to Plaintiff includes "literary property and rights, of any and every kind or nature."  SGI ¶¶ 32, 33.  (Emphasis added.)   Literary property is indisputably intellectual property.  So is the right of publicity.  *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322-23 (11th Cir. 2006) (collecting cases and authority for the proposition that the right of publicity is intellectual property).   Perhaps it is under that reasoning that Plaintiff argues for an interpretation of "rights" that includes "publicity rights" and "trademark rights" (even if not explicitly stated), arguing that the expansiveness of the language (e.g., "of any and every kind of nature") should be taken as evidence that Einstein *would have* conveyed his right of publicity and trademark rights to Plaintiff.  In either case, there is still no dispute that the Trust does not explicitly mention publicity rights or trademark rights.  This leaves open the question of whether the Trust can be interpreted to include the right of publicity or trademark rights.

## IV.   ANALYSIS

### A.   New Jersey Law Controls and Federal Courts Sitting in New Jersey Have Recognized a Postmortem Right of Publicity

　　The parties agree that Einstein was domiciled in New Jersey when he died, and that New Jersey law controls the issue of whether he had a postmortem right of celebrity. Cal. Civ. Code § 946 ("If there is no law to the contrary, in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

law of his domicile."); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1145 (9th Cir. 2002)
(interpreting Civil Code section 946 to require application of the law of an individual's
domicile at death in right of publicity case, even though California's right of publicity
statute purportedly applies to "acts occurring directly in [California]").

No New Jersey statute provides for a postmortem right of publicity, and no
New Jersey state court has recognized such a right.  However, Defendant concedes that
federal courts sitting in New Jersey "have predicted that New Jersey state courts would
recognize a post-mortem right of publicity," albeit only if the decedent has commercially
exploited that right during his lifetime.  *Presley's Estate v. Russen*, 513 F. Supp. 1339
(D.N.J. 1981) ("Although the courts in New Jersey have not used the term 'right of
publicity,' they have recognized and supported an individual's right to prevent the
unauthorized, commercial appropriation of his name or likeness. . . .  We thus determine
that during his life Elvis Presley owned a property right in his name and likeness which
he could license or assign for his commercial benefit. . . .  [W]e hold that Elvis Presley's
right of publicity survived his death and became part of Presley's estate.").  *Id.* at 1354-
1355.

**B.      Establishing a Postmortem Right of Publicity Does Not Require
          Evidence of Lifetime Exploitation**

The *Presley* court expressly avoided deciding the question of whether lifetime
exploitation is required "since Presley exercised the right to commercially exploit his
name and likeness during his life."  513 F. Supp. at 1355, n.10.  Another federal district
court sitting in New Jersey did answer this question when it granted summary judgment
in favor of the defendant because the plaintiffs failed to present any proof that decedent
Edward Gleason "had actively exploited his name and likeness or somehow had become
a public figure . . . ."  *Gleason v. Hustler Magazine, Inc.*, 7 Med. L. Rep. 2183, 2185
(D.N.J. July 6, 1981) (decisions recognizing a postmortem right "reflect reliance on a
critical element: the decedent's own overt exploitation of his name or likeness, usually
through an *inter vivos* transfer of his rights").  Defendant argues that "this Court should
follow *Gleason* and hold that New Jersey requires exploitation of a right of publicity
during life as a prerequisite to finding a post-mortem right."  Motion at 12.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

Defendant did not cite to the dicta in *Jarvis v. A & M Records*, 827 F. Supp. 282, 297-98 (D.N.J. 1993) ("The right of publicity generally applies to situations where the plaintiff's name, reputation or accomplishments are highly publicized and the defendant used that fact to his or her advantage.")   In *Hart v. Electronic Arts, Inc.*, 740 F.Supp.2d 658, 664 (D.N.J. 2010) in addressing a motion to dismiss a claim for civil conspiracy arising out of new Jersey's Consumer Fraud Act, the Court stated,

> "Succinctly put, "[New Jersey's] right of publicity signifies the right of an individual, especially a public figure or celebrity, to control the commercial value and exploitation of his name and picture or likeness and to prevent others from unfairly appropriating this value for commercial benefit." *McFarland v. Miller,* 14 F.3d 912, 918 (3d Cir.1994) (citations omitted) *quoted in Prima v. Darden Rest.,* 78 F.Supp.2d 337, 348 (D.N.J.2000); *see also Jarvis v. A & M Records,* 827 F.Supp. 282, 297 (D.N.J.1993) ("The right of publicity generally applies to situations where the plaintiff's name, reputation or accomplishments are highly publicized and the defendant used that fact to his or her advantage."). Underlying this right is the theory that "a celebrity has the right to capitalize on his persona, and the unauthorized use of that persona for commercial, gain violates fundamental notions of fairness and deprives the celebrity of some economic value in his persona." *Prima,* 78 F.Supp.2d at 349 (citing *McFarland,* 14 F.3d at 919) . . . ."

In addition to *Gleason*, Defendant cites to decisions from Arizona, California, and Utah, and refers to the necessity of lifetime exploitation as "the prevailing rule."  Motion at 13 n.8; *Nature's Way Prods., Inc. v. Nature-Pharma, Inc.*, 736 F. Supp. 245, 252 (D. Utah 1990); *Sinkler v. Goldsmith*, 623 F. Supp. 727, 733-34 (D. Ariz. 1985).  In fact, the supposed "prevailing rule" appears to exist only in New Jersey based exclusively on *Gleason*), Arizona, and Utah.  The *Nature's Way* court in Utah imposed the rule "under the mistaken impression that lifetime exploitation was the rule in other states.  In fact, lifetime exploitation was not the rule in any other state at the time."  2 J. Thomas

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|

| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC |
|---|---|

McCarthy, Rights of Publicity and Privacy § 9:38.[2]

Similarly, *Sinkler* is hardly persuasive.  It disposes of the issue in two sentences, with no analysis as to whether the lifetime exploitation requirement has any grounding in logic.  623 F. Supp. 727, 733-34 (D. Ariz. 1985) ("[T]he right of publicity has been held to survive if the holder of the right exploited it during his lifetime. . . .  There is no showing that Joel exploited the use of his name and personality by assigning the right to use them to another.").

In *Lugosi v. Universal Pictures*, a 4-3 decision, the California Supreme Court held "that the right to exploit name and likeness is personal to the artist and must be exercised, if at all, by him during his lifetime."  25 Cal. 3d 813, 824 (1979); *see* 2 J. Thomas McCarthy, Rights of Publicity and Privacy § 9:20 (characterizing the *Lugosi* decision as "convoluted, confused, and opaque").  The California Supreme Court later clarified that *Lugosi* held "that the right of publicity protects against the unauthorized use of one's name, likeness or personality, but that the right is not descendible and expires upon the death of the person so protected."  *Guglielmi v. Spelling-Goldberg Productions*, 25 Cal.3d 860, 861 (1979).  In 1985, the California legislature enacted a statute expressly recognizing a postmortem right of publicity without need of lifetime exploitation.  Cal. Civil Code § 990.  In 1999, Civil Code section 990 was renumbered and the 50-year duration was extended to 70 years.  Cal. Civil Code § 3344.1).

Plaintiff, in response to defendant's authorities, argues that "courts applying New Jersey law have consistently upheld post mortem right of publicity claims without requiring the plaintiff to establish lifetime exploitation by the deceased celebrity."  Plaintiff is not correct. [3]  Plaintiff's authority in support of this proposition is not entirely

---

[2] If one considers *Gleason* to be controlling law in New Jersey, then McCarthy is mistaken that lifetime exploitation was not the rule in *any* other state at the time *Nature's Way* was decided, but the fact that McCarthy overlooked (or ignored) *Gleason* suggests that it lacks much precedential value.  Regardless, a single district court decision in an unofficial reporter does not a majority rule make.

[3] Plaintiff, too, ignores the *dicta* from *Jarvis*, *supra*, and *Hart*, *supra*.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

on point, moreover.  In *Prima v. Darden*, 78 F. Supp. 2d 337 (D.N.J. 2000) for example, Plaintiff alleged that Olive Garden used a "sound alike" singer to record a Louis Prima song that it used in a television commercial, thereby violating his right of publicity.  In denying a motion for judgment on the pleadings, the *Prima* decision did not mention the lifetime exploitation requirement.  But Louis Prima had exploited his voice during his lifetime by recording and selling numerous songs, including "Oh Marie," the very number which Olive Garden used in its advertisement.

Plaintiff also relies on *McFarland v. Miller*, a right of publicity action brought by George "Spanky" McFarland, while McFarland was alive.  14 F.3d 912, 913 n.1 (3rd Cir. 1994).  McFarland died during the pendency of the appeal, and his wife then pursued the case as his personal representative.  *Id.* at 913 n.1.  Given that McFarland was alive when he filed his action, the court was faced with an issue distinct from that decided in *Presley* (where the alleged infringement occurred after Presley's death).  *Id.* at 917.  The *McFarland* court interpreted New Jersey's survivorship statute, and concluded that his wife could continue pursuing his claim.  *Id.* at 918.  In any event, the court just did not address whether the right of publicity survived absent evidence of lifetime exploitation.  2 J. Thomas McCarthy, Rights of Publicity and Privacy § 9:3 (2d ed. 2011) (*McFarland* addressed "survivability" and did not reach "whether or not a 'right' owned by a person continues after that person's death so that their [sic] heirs can sue for an infringement of that right which occurs after death").

Similarly, *Palmer v. Schonhorn Enterprises, Inc.* is inapposite because it was brought by a plaintiff, Arnold Palmer, who *had* commercially exploited his celebrity during his lifetime, seeking damages for invasion of his right to privacy (not infringement of his right of publicity).  96 N.J. Super. 72 (1967).

Other than *Gleason*, no New Jersey court has actually dismissed a postmortem right of publicity claim because of a failure to demonstrate lifetime exploitation.  *Gleason* is not compelling authority.  It is an obscure case, as reflected in its being merely a

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|

| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC |
|---|---|

transcript of an oral order reported only in the Media Law Reporter.[4]  And there is little to recommend the lifetime exploitation requirement.  According to McCarthy:

"[T]he overwhelming majority rule under either statute or common law is that the right of publicity is descendible property and has a postmortem duration which is *not conditioned on lifetime exploitation*."  2 J. Thomas McCarthy, Rights of Publicity and Privacy § 9:17.

McCarthy also notes,

> At this point it seems apparent that the "lifetime exploitation" requirement appeared out of nowhere in the case law and was parroted by courts thereafter.  Neither at its genesis nor thereafter did a court bother to explain the why or wherefore of having such a requirement.  Like a deus ex machina, it descended out of the sky without explanation or rationale.  Once on the stage it began to run amok . . . .   Poorly conceived, it never had a firm foundation in logic, law or policy.   While a well crafted compromise between extreme positions is the stock in trade of politics, a compromise in legal theory is sometimes the worst of all possible worlds. This is the case with the "lifetime exploitation" requirement.  Its weak logical foundations soon became apparent as the courts and legislatures began to reject it.

2 J. Thomas McCarthy, Rights of Publicity and Privacy § 9:14; *see also* Restatement (Third) of Unfair Competition § 46 cmt. h (1995) ("Although commercial exploitation prior to death can be relevant in establishing the value of the appropriated identity, it should not be required as a condition of descent.").

As McCarthy references, there is well-reasoned authority rejecting the lifetime

---

[4] As this Court discovered, *Gleason* is not readily available online through Lexis or Westlaw.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

exploitation requirement.  *See, e.g., Martin Luther King, Jr., Center for Social Change, Inc. v. American Heritage Products, Inc.*, 694 F.2d 674, 678 (11th Cir. 1983) ("*King*"). According to the *King* court:

> Without doubt, Dr. King could have exploited his name and likeness during his lifetime.  That this opportunity was not appealing to him does not mean that others have the right to use his name and likeness in ways he himself chose not to do.  Nor does it strip his family and estate of the right to control, preserve and extend his status and memory and to prevent unauthorized exploitations thereof by others.

694 F.2d at 674.

The right of publicity is an asset, to be sure, but that does not necessarily mean it must be conditioned upon lifetime commercial exploitation of its value.  There are sound, even compelling, reasons to allow the heirs of a famous decedent to prevent strangers from exploiting his name, image, reputation and identity, even if the decedent himself did not do so during his lifetime.  For example, there have been famous people who, during their lifetimes and afterward, renounced wealth or declined to pursue it, and in part for that reason were revered for their modesty and spirituality.  Surely a part of whatever happiness and satisfaction they derived from being famous came from the realization that they were setting an example for those closest to them - - presumably including their heirs.  Such people fairly can be deemed to have "exploited" their fame by developing a persona that showed that what they cared most about was "What do I stand for?   How will I be remembered?"  Their death should not deprive them of the very attribute that they intended to leave as their legacy.

Although Plaintiff has presented sufficient evidence to create at least a genuine dispute of fact concerning whether in a conventional manner Einstein exploited his right of publicity during his lifetime, this Court finds that at least insofar as a person's fame derives from what Einstein stood for, the New Jersey Supreme Court would *not* impose a requirement of lifetime exploitation.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

**C.** **There Is a Genuine Dispute of Material Fact Regarding How Einstein Would Have Disposed of His Right of Publicity**

Defendant argues that even if Einstein's right of publicity survived his death, it would have passed to his stepdaughter Margot Einstein, thorough the Will's residual clause at Article 14, rather than to Plaintiff through the Trust created by Article 13.[5] Article 14 reads, "All of the rest, residue and remainder of my estate, of every kind or nature, whether real or personal, and wherever situate [sic], I give, devise and bequeath to my step-daughter, Margot Einstein, or if she shall predecease me then to my son, Albert Einstein, Jr., for her or his own use and benefit." Doran Decl. Exh. E at 15.

As noted above, the relevant language in Article 13 reads:

> I give and bequeath all of my manuscripts, copyrights, publication rights, royalties and royalty agreements, and all other literary property and rights, of any and every kind or nature whatsoever, to my Trustees hereinafter named, IN TRUST, to hold the same for a term measured by the lives of my secretary Helena Dukas, and my step-daughter, Margot Einstein . . . . Upon the death of the said Helena Dukas and the said Margot Einstein, this trust shall terminate, and thereupon all funds or property, if any, still held in this trust, including all accrued, accumulated and undistributed income and all literary rights and property, shall pass and be distributed to Hebrew University . . . .

Doran Decl. Exh. E at 12-13, 14.

---

[5] Plaintiff contends in a footnote that, even if this were true, it would still be the owner of the right because it would have passed through the residual clause of Margot Einstein's will to Plaintiff (and to Margot's other beneficiaries). Opp. at 19 n.9. As Defendant points out, however, Plaintiff has not alleged any claim in this case through Margot Einstein's will, nor has it provided any evidence that she owned Einstein's right of publicity when she died. Reply at 22.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|

| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC |
|---|---|

Defendant argues that Article 13 refers only to literary property and literary rights, which have common meanings that unambiguously *exclude* Einstein's right of publicity. *See, e.g.*, *Capitol Records, Inc. v. Mercury Records Corp.*, 221 F.2d 657, 662 (2d Cir. 1955) ("Literary property is in essence a right to exclude, to a greater or lesser extent, others from making some or all use of the expressed thoughts of an author."); *Desny v. Wilder*, 46 Cal. 2d 715, 740 (1956) ("'Literary property' is a general term which is used either to describe the interest of an author . . . in his works . . . or to denote the corporeal property in which an intellectual production is embodied."). Further, "the general description 'literary property or rights' follows the enumeration of 'manuscripts, copyrights, publication rights, royalties, and royalty agreements,' and therefore refers only to rights of that nature." Motion at 20; citing *In re Bibinski's Estate*, 73 N.J. Super. 163, 167 (1962) (relying on the principle of *ejusdem generis*, "where certain things are enumerated . . . and a more general description is coupled with that enumeration . . . the latter term is commonly understood to cover only things of a like kind with those enumerated").

Plaintiff argues that the language in Article 13 contains "no limiting or exclusionary words *at all* used to describe the rights transferred, and certainly nothing specifically excluding publicity rights . . . ." Opp. at 16. According to Plaintiff's line of argument, the Will itself could not have explicitly included (or excluded) Einstein's right of publicity because "[t]he concept of a descendible right of publicity did not yet exist when the Will was created in 1950." Opp. at 17. In fact, argues Plaintiff,

> Even though Dr. Einstein was clearly aware of his value as a celebrity [exemplified, for example, by agreeing to the use of his name to further causes he supported], there was no need for him to specify that he was transferring rights related to his celebrity status in the Will or to treat those rights differently than the other rights he transferred to the Trust because under New Jersey law the right of publicity nomenclature had not yet been created. To say that Dr. Einstein intended to exclude publicity rights in his Will is like saying he intended to exclude revenues from DVD sales and iTunes downloads.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

Opp. at 17.

Later, in explaining why none of Einstein's heirs had asserted ownership of Einstein's right of publicity until 1985, Plaintiff argues that "*there were not any legally recognized rights to abandon* until 1981, since that was the first time (in *Presley*) that a court recognized the post mortem right of publicity under New Jersey law." Opp. at 20.

Plaintiff walks a fine line here. For as Defendant argues, "[I]f Dr. Einstein had no post-mortem rights when he died . . . then he had no rights to bequeath to anyone." Reply at 22. Federal district courts in California and New York, for example, have held that Marilyn Monroe had no postmortem right of publicity because no such right existed in California or New York at the time of her death, and so such right could not have passed through her will. *Shaw Family Archives Ltd. v. CMG Worldwide, Inc.*, 486 F. Supp. 2d 309, 319 (S.D.N.Y. 2007) (applying California law); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200 MMM (C.D. Cal. May 14, 2007) (Morrow, J.).[6]

The fact that no New Jersey court had acknowledged a right of publicity prior to Einstein's death does not mean that no such right existed, nor that it could not have become part of his estate. The Marilyn Monroe decisions are distinguishable because a descendible postmortem right of publicity did not exist in California until it was created by *statute* in 1985 (and the statute was not amended to clarify it applied retroactively until after the Marilyn Monroe decisions). Similarly, in New York, although federal courts predicted a postmortem right of publicity would be recognized by New York, state courts there eventually concluded there was no such right. *See Stephano v. News Group Publications*, 64 N.Y. 2d 174 (1984). In New Jersey, by contrast, *Presley* held that there *is* a postmortem right of publicity. When the *Presley* court recognized Presley had a right of publicity that survived his death and became part of his estate, it did not *create* such a

---

[6] The California legislature later amended California's right of publicity statute to specifically extend the right to any person who died prior to 1985. Cal. Civil Code § 3344.1.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

right; it merely recognized it.  If the *Presley* court had actually created the

postmortem right of publicity in New Jersey, the right would have existed only prospectively and Presley would not have been able to bequeath it to his estate.

But that the right existed, at least in nascent form, and that Einstein, Dukas and Margot said nothing about it, does not necessarily mean that Plaintiff cannot pursue this claim.  For, as Plaintiff argues, had Einstein been aware of the postmortem right of publicity that New Jersey later recognized, he would have made it part of the Trust property that ultimately passed to Plaintiff.  Plaintiff relies for this argument on the so-called "doctrine of probable intent," which provides:

> [I]n ascertaining the subjective intent of the testator, courts will give primary emphasis to his dominant plan and purpose as they appear from the entirety of his will when read and considered in the light of the surrounding facts and circumstances . . . .
> So far as the situation permits, courts will ascribe to the testator 'those impulses which are common to human nature and will construe the will so as to effectuate those impulses.

*In re Estate of Branigan*, 129 N.J. 324, 332 (1992) (quoting *Fidelity Union Trust Co. v. Robert*, 36 N.J. 561, 564-65 (1962)).  Pursuant to this doctrine, "Courts are enjoined to 'strain' toward effectuating the testator's probable intent 'to accomplish what he would have done had he envisioned the present inquiry.'" *Branigan*, 129 N.J. at 332 (quoting *Fidelity*, 36 N.J. at 564-68).

Here, Plaintiff contends that the "language of the Will confirms that it was Dr. Einstein's overarching purpose and intent to convey the fruits of his life work to [Plaintiff] following the deaths of Ms. Dukas and Ms. Einstein."  Opp. at 20.  Further, Plaintiff argues that "[w]hile the Will does refer to 'literary' rights, it is much more likely that the use of the word 'literary' was simply descriptive, rather than limiting . . . since at the time, Dr. Einstein's literary rights constituted the legally recognized universe of property that embodied his life work. . . . .  [I]t was obviously his intention to expansively bequeath all the benefits flowing from [his] achievements to the Trust . . . ."  Opp. at 21.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

In opposition, Defendant argues that the "doctrine of probable intent is not applicable where the documents are clear on their face and there is no failure of any bequest or provision." *In re Estate of Gabrellian*, 372 N.J. Super. 432, 443 (2004). In *Gabrellian*, the decedent's son appealed a grant of summary judgment, contending that there were material issues of fact regarding the decedent's probable intent, that the will was not clear on its face, and that the trial judge "erroneously failed to consider extrinsic evidence." *Id.* at 440. The son, who was co-executor of the estate with his mother, argued that "the testator's probable intent required the co-executors to continue to operate the testator's businesses with [the son] as the manager . . . ." *Id*. at 437. The appellate court affirmed the trial court's grant of summary judgment, finding that "[t]he Will and the Writing signed by testator, even if viewed together, do not create an ambiguity. The probated Will indicates the testator's intent that his wife receive his entire residual estate, including the businesses, and the Writing reiterates his intent that 'everything' was to pass to [his wife]." *Id.* at 443. Therefore, "[t]here is nothing to support [the son's] claim, particularly in light of the unambiguous bequests, to retain control of his father's businesses." *Id.*

The *Gabrellian* court sets forth a number of restrictions on the use of the doctrine of probable intent:

> [T]he concept of presumed probable intent must be applied sparingly and only where necessary to give effect to the intent of the will or trust without varying the terms of the document. . . . The doctrine of probable intent cannot be used to conjure up an interpretation or derive a missing testamentary provision out of whole cloth. . . . It cannot be used to write a will that the testator did not write. . . . Where the doctrine has been used it has been done only with caution and to clarify ambiguities in a will, usually where an unforeseen contingency occurred which might have resulted in unexpected intestacies . . . or to achieve certain tax advantages without substantive changes in any substantive provisions of a will or trust.

372 N.J. Super. at 441-42 (citations omitted).

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

*Gabrellian*'s strictures are largely inapplicable here.  Thus, the right of publicity may be found to have passed to Plaintiff through the Trust without varying the terms of the Will.  Concluding that the right of publicity would have been conveyed through Article 13 is not "conjuring up an interpretation" insofar as there is already a broad bequest of intellectual property to Plaintiff through the Trust.  No wholesale invention is necessary to pass the right of publicity to Plaintiff.

Defendant cites also to *In re Estate of Munger* (63 N.J. 514, 522 (1973)) and *In re Trust Created by Agreement Dated December 20, 1961* (166 N.J. 340, 356 (2001)).  In *Munger*, the New Jersey Supreme Court refused "to interpret a trust allowing investment in 'securities' to permit investment in real estate, despite evidence the testator intended that."  Reply at 18.  Similarly, in *In re Trust*, "the court refused to revise a trust to exclude the testator's grandchild even though the testator, in creating a later trust, made clear that he wished to exclude her . . . ."  Reply at 18.  Both of these cases are distinguishable.  Each involved someone seeking to alter a material term of a trust regarding a matter of which the decedent was aware when the trust was created.  In *Munger*, for example, real estate investments existed in 1955, when the decedent executed the will creating the trust, but the trust explicitly permitted only investment in securities.  In *In re Trust*, the testator was aware of his grandchild's existence, but he did not specifically exclude her when he created the trust.

The parties have not cited, nor has the Court found, a New Jersey case dealing with a situation even analogous to this case: a decedent's intellectual property (here, the right to publicity) is recognized by the courts only after his death; the decedent's will places in trust other intellectual property that is similar to the right of publicity in certain material respects (it led to decedent's fame and constituted his achievements, but also had value because of his fame and achievements); and the ultimate recipient of the trust property contends that the decedent would have intended the later-recognized intellectual property to be placed in the trust, rather than to have it pass through the will's residual clause.

The Court concludes that the doctrine of probable intent may be applied.  However, there is a genuine dispute of material fact concerning Einstein's probable intent, which must be determined by considering "the entirety of the will in light of the circumstances surrounding the execution of the will."  *Gabrellian*, 372 N.J. Super at 441

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

(citation omitted).  Extrinsic evidence, such as the Levy Declaration and the Nathan
Declaration, may be consulted to the extent they "shed light on the testator's actual
intent."  *Id.* at 441 (quoting *Wilson v. Flowers*, 58 N.J. 250, 263 (1971).  The Levy
Declaration and Nathan Declaration, for example, are susceptible of different meanings
on the question of Einstein's intent.  This factual dispute over Einstein's intent cannot be
resolved at the summary judgment stage.[7]

For the foregoing reasons, the Court DENIES defendant's summary judgment
motion as to the third and fourth causes of action.

**D.    Plaintiff's Other Causes of Action**

1.    <u>Defendant is entitled to summary judgment on Plaintiff's first cause of
action under the Lanham Act</u>

Plaintiff's First Cause of Action asserts a claim for unfair competition and false
endorsement under the Lanham Act, 15 U.S.C. section 1125(a).  "Unlike the broader
right of publicity, which is infringed by the 'unpermitted use of a person's identity'
containing 'no false inference that plaintiff endorses or approves the product,' § 1125(a)
prohibits only *false endorsement*, not mere use of an image or name."  *Cairns v. Franklin
Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000) (quoting 5 J. Thomas McCarthy,
McCarthy on Trademarks and Unfair Competition, § 28:14 (4th ed. 1996).  "A false
endorsement claim based on the unauthorized use of a celebrity's identity is a type of

---

[7] The Court will defer ruling on the issue of the duration of the right of publicity
until after it is determined whether the right actually passed to Plaintiff through Article
13.  The Court notes that unless the duration is greater than 50 years, the right would
have expired by the time of the alleged infringement.  Statutes creating a postmortem
duration of the right of publicity vary from 20 years to 100 years, although "the majority
of commentators favors borrowing from federal copyright law the duration of life plus 50
years (or 70 years) after death."  2 J. Thomas McCarthy, Rights of Publicity and Privacy
§ 9:16 (Also observing that "[m]ost commentators and judges take the position

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

false association claim for it alleges . . . misuse of a trademark which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Cairns*, 107 F. Supp. 2d at 1214 (quotation marks and citation omitted).[8] "Only uses which that it is not an appropriate common law function of a court to set a precise duration for the postmortem right of publicity."). suggest sponsorship or approval are prohibited." *Id.*


In cases alleging an infringing use of a celebrity's image to imply endorsement of a product, courts in the Ninth Circuit consider the eight factors in *AMF Inc. v. Sleekcraft Boats* to analyze the likelihood of confusion regarding endorsement. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1053-54 (9th Cir. 1999) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).  The eight factors (which are not necessarily the exclusive factors for determining infringement) are: (1) strength of the mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) Defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.*  This eight-factor test is "pliant," and the relative importance of each individual factor is case-specific. *Id.* at 1054.  "Other variables may come into play depending on the facts presented." *Sleekcraft*, 599 F.2d at 348 n.11.  In *Cairns*, for example, the Court found it necessary to analyze an additional factor,"the strength of the association between the mark and plaintiffs . . . ."  107 F. Supp. 2d at 1217.

In the past, the Ninth Circuit has emphasized certain factors as the most important among the eight *Sleekcraft* factors.  *See, .e.g, GoTo.com, Inc.*, 202 F.3d at 1205 (emphasizing similarity of the marks, relatedness of goods or services, and the use of similar marketing channels, for any case addressing trademark infringement on the

---

[8] "In a case involving confusion over endorsement by a celebrity plaintiff, 'mark' means the celebrity's persona and the strength of the mark refers to the level of recognition the celebrity enjoys." *Wendt v. Host Intern., Inc.*, 125 F.3d 806, 812 (9th Cir. 1997).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

Internet).  However, the Ninth Circuit has recently held that the court should "examin[e] .
. . each *Sleekcraft* factor to analyze whether there is a likelihood of consumer confusion
in this case, [by] assigning each factor appropriate weight in accordance with its
relevance to the factual circumstances presented here."  *Network Automation, Inc. v.
Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011).


        Defendant, as the moving party, has pointed to a lack of evidence of any consumer
confusion and argues that Plaintiff cannot meet its burden of demonstrating that the
Advertisement implies that Plaintiff endorsed the Terrain.  *See Cairns, supra,* at 1221
(granting summary judgment to defendants who sold products depicting Princess Diana
because of "weak association" between defendants and Princess Diana, and concomitant
unlikelihood "that defendants' use will cause confusion as to plaintiffs' endorsement."
Here, as defendant emphasizes, a minimal association exists between Plaintiff and the
mark, which greatly reduces the likelihood that consumers viewing the Advertisement
will conclude that Plaintiff endorsed the product.  "The Advertisement does not state
expressly (or even imply) that Dr. Einstein (or HUJ) endorsed the Terrain, nor would any
reasonable reader reach that conclusion.  Instead, the Advertisement uses Dr. Einstein's
face, superimposed on someone else's body, as a play on *People* magazine's "Sexiest
Man Alive" edition, and to make a light-hearted point about the smart (but "sexy")
features of the Terrain."  Motion at 23-24.

        Plaintiff argues that Defendant misstates the law by focusing on the single factor of
the relative strength or weakness of its association with Einstein.  Plaintiff is correct that
no single *Sleekcraft* factor should be relied upon to the exclusion of others, but it fails to
point to *any* evidence in the record that establishes a genuine dispute of material fact
regarding consumer confusion.  Plaintiff "disputes" the facts relating to the
Advertisement merely by citing to the Advertisement itself and claiming that it "implies
and creates the false impression that Dr. Einstein's estate and/or [Plaintiff] were
associated with the Advertisement."  *E.g.*, SGI § 42.  Even if that is plausible - - doubtful
- - this is a motion for summary judgment, not a motion to dismiss, and the Court will not
sift through the record attempting to find evidence to support Plaintiff's case.  *See, e.g.,
Nicholas Acoustics & Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 846–47 (5th
Cir.1983) ("We wish to emphasize most strongly that it is fool-hardy for counsel to rely

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|

| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC |
|---|---|

on a court to find disputed issues of material fact not highlighted by counsel's paperwork
. . . . Judges are not ferrets!").

Turning to other *Sleekcraft* factors, the Court will assume, for purposes of this
analysis, that Einstein's likeness constitutes a strong mark. Since the Advertisement
contains a photographic image of Einstein, the marks here are identical. However,
Plaintiff has not even shown a tenuous connection between the "goods" at issue. *See
White v. Samsung Electronics America, Inc.*, 971 F.2d 1395, 1399 (9th Cir. 1992) ("the
plaintiff's 'goods' concern the reasons for or source of the plaintiff's fame"); *Cairns*, 107
F. Supp. 2d. at 1220 ("[D]efendant's products [jewelry, plates, sculptures and dolls
depicting Princess Diana] are closely related to Princess Diana's fame associated with her
status as a member of Britain's Royal Family . . . ."). At most, the Terrain draws its value
from Einstein's image only indirectly and remotely; the ad was not for an Einstein
product. Einstein is famous largely due to his towering intellect, a point emphasized by
the "e=mc$^2$" tattoo sported by the Advertisement's Einstein doppelganger. "So what the
Advertisement suggests is that the Terrain vehicle is endowed with "smart (but 'sexy')
features." Reply at 24. So what? Einstein = smart. Terrain = smart. Ergo, does Einstein
= Approval of Terrain? In short, any link between the "hunky" model in the ad,
Einstein's image and the vehicle is too weak to create a link between two "goods."

Other *Sleekcraft* factors warrant summary judgment. Plaintiff points to no
evidence of the strength of association between the mark and The Hebrew University of
Jerusalem. Plaintiff points to no evidence regarding the degree of care consumers are
likely to exercise when purchasing a car. *See, AM General Corp. v. DaimlerChrysler
Corp.*, 311 F.3d 796, 828 (7th Cir. 2002) ("[C]onsumers who buy or lease a vehicle that
sells for more than $16,000.00 . . . are likely to use a very high degree of care . . . .").
Plaintiff points to no evidence that Defendant *intended* to profit by confusing consumers
into believing Plaintiff endorsed the Terrain. Plaintiff points to no evidence that it
markets products bearing the image of Einstein through the same marketing channels as
Defendant or that any of its approved product lines will expand to overlap with
Defendant's product lines. Finally, Plaintiff points to no evidence of actual consumer
confusion.

Plaintiff has failed to meet its burden of producing evidence sufficient to create a

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | March 16, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

genuine dispute of material fact.  Accordingly, Defendant's motion for summary judgment is GRANTED on Plaintiff's claim for unfair competition and false endorsement under the Lanham Act.

> 2.    Defendant is entitled to summary judgment on Plaintiff's second cause of action under the UCL

The parties agree that Plaintiff's UCL claim rises or falls with the Lanham Act claim, in that both "turn on whether the public is likely to be deceived."  For the reasons described above, Plaintiff has failed to present any evidence of consumer confusion in support of its UCL claim.  Accordingly, Defendant's motion for summary judgment is GRANTED on this claim.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment in part and DENIES it in part.

No hearing is necessary.  L.R. 7-15; Fed. R. Civ. P. 78.

_____ : _____

Initials of Preparer                    SMO