O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03790 AHM (JCx) | Date | May 31, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:   Attorneys **NOT** Present for Defendants:

**Proceedings:**   IN CHAMBERS (No Proceedings Held)

Plaintiff Hebrew University of Jerusalem ("HUJ") brought this action against Defendant General Motors ("GM") for using an image of Albert Einstein in a GM advertisement without obtaining authorization from HUJ. On March 16, 2012, this Court held that GM was entitled to summary judgment on HUJ's UCL and Lanham Act claims but denied summary judgment on HUJ's right of publicity claim. (Dkt. 137.) Thus, the only claim remaining in this action is HUJ's right of publicity claim.

Before the Court are HUJ's motions *in limine* ("MILs") 1-2 and GM's MILs 1-6. For the reasons set forth below, the Court GRANTS each party's motions.[1]

## I.   PLAINTIFF HUJ'S MILS

### A.   The Court GRANTS Plaintiff HUJ's MIL 1 to Exclude Evidence of the WIPO Arbitration Decision.

HUJ moves this Court to prevent GM from introducing at trial a 2002 arbitration decision by the World Intellectual Property Organization ("WIPO")[2], *Hebrew University*

---

[1] Dkts. 51, 52, 53, 57, 59, 66, 67, and 68.

[2] According to WIPO's website, "the WIPO Arbitration and Mediation Center was established in 1994 to offer Alternative Dispute Resolution (ADR) options, in particular arbitration and mediation, for the resolution of international commercial disputes between private parties. Developed by leading experts in cross-border dispute settlement, the procedures offered by the Center are widely recognized as particularly appropriate for technology, entertainment and other disputes involving intellectual

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03790 AHM (JCx) | Date | May 31, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

*of Jerusalem v. Alberta Hot Rods*, WIPO Case No. D2002-0616 (Oct. 7, 2002). In *Alberta Hot Rods*, the WIPO Arbitration and Mediation Center determined that HUJ had failed to prove that it owned a trademark in Einstein's name because there was no evidence that Einstein had exploited a common law trademark in his name during his lifetime. (Mot. Exh. A, p. 6.) The panel also noted that even if Einstein had exploited such a trademark, HUJ had not proven that Einstein had passed that right to HUJ through his will. (Mot. Exh. A, p. 6.) The panel reached this conclusion after determining that the phrase "all other literary property and rights" in Article 13 of Einstein's will meant "literary property and *all other literary* rights," which did not include trademark rights.

      The Court finds that the *Alberta Hot Rods* decision is not relevant to prove any fact of consequence in this action. As the Court held in its March 16 summary judgment order, the pertinent question remaining for trial is whether or not Einstein intended in his will to pass on his right of publicity to HUJ. The *Alberta Hot Rods* decision, which occurred decades after Einstein's death, is not in any way probative of Einstein's intent. Moreover, the issue before the arbitration panel in *Alberta Hot Rods* was whether HUJ could prove a trademark claim, whereas the only claim remaining in this case is HUJ's right of publicity claim. Even assuming there is some factual overlap between the two claims, the *Alberta Hot Rods* decision was based on legal principles and conclusions that differed from those reached by this Court in its March 16 summary judgment ruling. Unlike the WIPO panel's findings regarding HUJ's trademark claims, this Court found with respect to HUJ's right of publicity claim that (1) New Jersey law did not require HUJ to prove that Einstein had exploited his right of publicity during his lifetime, and (2) because Einstein's will was not clear on its face regarding rights of publicity, the doctrine of probable intent applied. (Dkt. 137, pp. 14, 20.) Because the non-binding WIPO decision rests on legal conclusions regarding a claim that is not before this Court and is not probative of Einstein's intent, the conclusions of the arbitration panel are factually irrelevant and would cause unnecessary confusion for the jury.

      GM argues that the WIPO decision is relevant to show whether GM's alleged violation of HUJ's publicity was "willful." GM claims that "the existence of a

---

property." WIPO Arbitration and Mediation Center (May 31, 2012), http://www.wipo.int/amc/en/index.html.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03790 AHM (JCx) | Date | May 31, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

longstanding good faith debate over whether Dr. Einstein bequeathed his non-literary rights to HUJ" makes it more likely that GM did not act willfully. GM admits, however, that it did not learn of the *Alberta Hot Rods* decision, along with many other arbitration decisions, until it conducted discovery in this case. (Opp. pp. 2-3.) GM cannot rely on a decision it did not know about at the time of the alleged infringement to argue that its actions were not willful.

Thus, the Court grants HUJ's motion to exclude the *Alberta Hot Rods* arbitration decision.

**B.    The Court GRANTS HUJ's MIL 2 to Exclude Evidence of Plaintiff's 2007 Correspondence with Getty Images**

GM wishes to introduce correspondence between HUJ and Getty Images that took place in 2007 ("2007 correspondence") as evidence that GM did not willfully violate HUJ's alleged right of publicity. In 2007, HUJ contacted a third party, Mitsui O.S.K. Lines ("Mitsui"), regarding the use of Einstein's image in an ad that is not at issue in this case. (Bayles Decl., Dkt. 52, Exh. A.) As the licensor of the photo, Getty Images responded on behalf of Mitsui and asked HUJ to prove its claim of ownership over Einstein's image. (*Id*.) The 2007 correspondence purportedly shows that HUJ made little effort to prove to Getty Images that HUJ owned the exclusive right to license Einstein's image for commercial purposes. HUJ moves to exclude the 2007 correspondence on the basis that it is not relevant or, alternatively, because it is unduly prejudicial.

The Court grants HUJ's motion to exclude the 2007 correspondence. That evidence is not probative of whether or not Einstein intended to bequeath his intellectual property rights, including the right of publicity, to HUJ. Neither is the Court persuaded by GM's claim that the correspondence is probative of GM's willfulness. GM does not assert in its opposition to HUJ's motion that anyone at GM had any knowledge of the 2007 correspondence between Getty Images and HUJ. Indeed, HUJ has provided deposition testimony from Mary Kubitsky (GM's National Advertising Manager) confirming that at the time of the alleged infringement, GM did not even know that HUJ claimed to have rights in the Einstein image. (Bayles Decl., Dkt. 115, Exh. A, 26:6-9.) Because GM was unaware of the 2007 correspondence, that evidence is not probative of GM's state of mind when it chose to use Einstein's image. As such, the Court finds that

O

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03790 AHM (JCx) | Date | May 31, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

the 2007 correspondence between HUJ, Mitsui, and Getty Images is irrelevant, and therefore the Court excludes evidence or discussion of it at trial.

## II. DEFENDANT GM'S MILS

### A. The Court GRANTS GM's MIL 1 to Exclude Evidence of Licensing Revenue, Agreements, and Credits

In its first motion *in limine*, GM moves to exclude reference to a 2008 issue of Forbes magazine that estimated the amount of revenue generated by Einstein's publicity rights ("Forbes estimates"). The Court agrees with GM that the Forbes estimates are inadmissible hearsay. It is apparent that HUJ wishes to introduce the Forbes estimates (an out-of-court statement) to show the truth of the matter asserted -- that in 2008, Einstein was the fourth highest earning celebrity, and that Einstein's publicity rights earned $18 million that year. HUJ argues that these estimates are probative of the fact that Einstein's publicity rights have value. (Opp. GM MIL 1, p. 6.) The fact that Forbes stated that Einstein's publicity rights earned $18 million in 2008, however, does not make it so. The Forbes estimates do not fall under any hearsay exception, and the Court therefore excludes reference to them at trial. The Court's decision is reinforced by the fact that GM has pointed to evidence that calls the accuracy of the Forbes estimates into question (*see* GM MIL 1 pp. 2-3), and HUJ has failed to counter with any evidence showing otherwise. Given that the amount of the revenues in the Forbes article is unreliable and inadmissible, so is the article's statement that the revenues derived from Einstein's celebrity are the fourth highest in that category.

GM also moves to exclude certain licensing agreements HUJ entered into with other parties for use of Einstein's image and name. HUJ intends to introduce 60 such agreements. GM argues that many of the agreements are irrelevant or would be unduly prejudicial if used to prove liability because the agreements create the impression that HUJ owns Einstein's image. GM also argues that HUJ failed to produce most of the licensing agreements in discovery. HUJ does not deny that it was asked to produce all such agreements and that it failed to produce many of the licensing agreements during discovery but argues that it did produce several and that GM's discovery request for the agreements was overly broad and unduly burdensome. (Opp. to GM MIL 1 p. 7-8.) The Court finds that, notwithstanding the discovery dispute between the parties, at least some

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03790 AHM (JCx) | Date | May 31, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

of the licensing agreements are relevant to proving damages at trial. GM states that it would not object to HUJ introducing licensing agreements that the parties' experts have identified as comparable for the purpose of analyzing damages. The Court therefore will permit HUJ to introduce any licensing agreement that either party's experts deemed comparable for a damages analysis.[3] The Court agrees with GM that all other licensing agreements, including merchandise agreements, which are priced differently than commercial advertising agreements, are irrelevant or unduly prejudice GM. The parties are to stipulate as to which agreements comply with the Court's decision.

Finally, GM moves to exclude products featuring Einstein's likeness that contain in small print a "credit" to HUJ stating that the "Einstein rights" are trademarked and/or copyrighted to "HUJ." HUJ argues that the credited images are relevant because they are probative of the fact that consumers have created an association between Einstein's name and HUJ. While the issue of whether consumers associated Einstein's image with HUJ was relevant to HUJ's Lanham Act claims, those claims are no longer in this action. HUJ's right of publicity claim is the only remaining claim for trial. Because the right of publicity claim does not require HUJ to show that consumers associated Einstein's images with HUJ, the Court finds that the products bearing a credit to HUJ lack sufficient probative value and excludes them from being introduced at trial.

### B. The Court GRANTS GM's MIL 2 to Exclude Undisclosed Witnesses

GM moves to exclude two HUJ witnesses: (1) Roger Richman, a former licensing agent for HUJ, and (2) Joyce Grossman, a representative of American Friends of Hebrew University ("AFHU"), an organization that registered Einstein's publicity rights in California in 1985. HUJ intends to call Richman and Grossman to testify at trial regarding their knowledge of the licensing of Einstein's name, likeness, and image. (Opp. to GM MIL 2, p. 2.) GM argues that HUJ failed to disclose either of these witnesses before the fact discovery cutoff on May 23, 2011, and is precluded from introducing them at trial under Fed. R. Civ. P. 37.

The facts surrounding this discovery dispute are as follows: When HUJ submitted

---

[3] GM asks to bifurcate the liability and damages phase of this trial to preclude the admissible licensing agreements from affecting the jury's determination of GM's liability. The Court will address this issue at the final pretrial conference.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03790 AHM (JCx) | Date | May 31, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

its initial disclosures to GM in October of 2010, HUJ disclosed Corbis Corporation as its licensing agent. (Rummage Decl. GM MIL 2, Exh. A, p. 3.) While HUJ also disclosed its intention to call as witnesses "persons . . . who have performed services for HUJ with knowledge of the facts relating to HUJ's rights of publicity in the name, likeness and image of Dr. Albert Einstein," HUJ did not name Richman or Grossman specifically. (Rummage Decl. GM MIL 2, Exh. A, p. 2.) GM noticed 30(b)(6) depositions for HUJ and Corbis. Due to scheduling conflicts between the parties, GM did not depose the 30(b)(6) witnesses until June and July of 2011, several weeks after the original May 23, 2011, discovery cut-off. During GM's depositions of the 30(b)(6) witnesses, counsel for the parties discovered that AFHU had assisted HUJ with the initial licensing of Einstein's rights of publicity by retaining Robert Richman's licensing agency. (Opp. to GM MIL 2 p. 2.) Thus, the 30(b)(6) witnesses for HUJ and Corbis, which acquired Robert Richman's agency in 2005, had no knowledge of the initial licensing. (Bayles Decl. Opp. to GM MIL 2, Exh. A.) HUJ now intends to call Richman and Grossman, neither of whom was disclosed to GM prior to the discovery cut-off, to testify at trial regarding the initial licensing.

   Rule 37(c)(1) provides:

   If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37.

   The Court finds that HUJ's failure to disclose Richman and Grossman was not substantially justified. HUJ claims that it did not know about Richman and AFHU's involvement in the initial licensing of Einstein's publicity rights until GM's 30(b)(6) depositions. HUJ provides no explanation, however, for why HUJ and its counsel were unaware of these facts until June and July of 2011, weeks after fact discovery was over. HUJ faults GM, arguing that if GM had conducted the depositions earlier or had requested information about early licensing in its interrogatories, the parties would have known about Richman and AFHU sooner. This argument is frivolous. Aside from the fact that the depositions appear to have been delayed to accommodate the schedules of

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03790 AHM (JCx) | Date | May 31, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

*both* parties, GM's discovery efforts have no bearing on the ability of HUJ or its counsel to ascertain from HUJ's current licensing agency information about the initial licensing of the very right of publicity HUJ is trying to assert in this action. If HUJ wished to introduce evidence regarding the initial licensing at trial, HUJ was obligated to find the relevant witnesses and disclose their identities to GM as soon as it was able to do so, regardless of whether GM sought discovery on the matter.

Neither was HUJ's failure to disclose Richman and Grossman harmless. GM was unable to depose Richman or Grossman because their roles in the initial licensing were not revealed until long after the discovery cut-off. GM would be prejudiced if it were required to cross examine these witnesses at trial without the benefit of deposition discovery concerning their testimony. HUJ's argument that it would have made Richman and Grossman available for depositions even after discovery cut-off is unavailing. As one court in the Southern District of California noted, "the untimely disclosure of witnesses potentially impacts decisions already made during the course of the litigation. If these witnesses who were not disclosed provide some basis for the reopening of discovery that has been closed since August 8, 2008, the financial cost to [the opposing party] and the disruption of the Court's and [the opposing party's] schedules would be unreasonably high." *Ollier v. Sweetwater Union High School Dist.*, 267 F.R.D. 339, 343 (S.D.Cal. 2010).

Thus, the Court grants GM's motion to exclude the testimony of Richman and Grossman at trial.

**C. The Court GRANTS GM's MILs 3, 4, and 5 Because They Have Been Resolved by This Court's March 16 Summary Judgment Ruling**

On March 16, 2012, after the parties filed the instant motions, the Court ruled on GM's motion for summary judgment. (Dkt. 137.) Soon after, on March 26, 2012, the parties submitted a joint status report regarding the effect of the Court's March 16 summary judgment ruling on the pending MILs. Both parties stated their belief that the Court's March 16 summary judgment ruling was likely dispositive of GM's MILs 3, 4, and 5. The Court accordingly GRANTS each of those MILs for the following reasons:

1. GM's MIL 3

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03790 AHM (JCx) | Date | May 31, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

In MIL 3, GM seeks to exclude HUJ exhibits purporting to show that Einstein commercially exploited his image or likeness during his lifetime. In its March 16 summary judgment ruling, the Court found that evidence of lifetime exploitation was not required to prove a postmortem right of publicity claim. (Dkl. 137, p. 9.) Thus, any evidence of exploitation is no longer relevant. The Court therefore grants GM's MIL 3.

    2.    <u>GM's MIL 4</u>

In MIL 4, GM moves to exclude evidence of Margot Einstein's will, arguing that (1) HUJ had failed to state a theory of recovery based on Margot's will in the pleadings, and (2) HUJ had failed to disclose its reliance on Margot's will during discovery. As the Court indicated in its March 16 summary judgment ruling, "Plaintiff has not alleged any claim in this case through Margot Einstein's will, nor has it provided any evidence that she owned Einstein's right of publicity when she died." (Dkt. 137, p. 15, n.5.) Accordingly, the Court finds that Margot Einstein's will is not relevant to prove any fact of consequence in this action. Thus, the Court grants GM's MIL 4.

    3.    <u>GM's MIL 5</u>

In MIL 5, GM moves to exclude the testimony and report by proposed expert Richard Lert regarding his understanding of New Jersey law. The Court previously granted a similar request by GM to strike Lert's declaration in support of HUJ's opposition to GM's motion for summary judgment. (Dkt. 136.) The Court stated, "The Court grants Defendant's request to strike the Declaration of Richard F. Lert, which amounts to a lawyer's legal analysis and resulting legal conclusions regarding the application of a legal doctrine." (Dkt. 136.) For the same reasons, the Court grants GM's MIL 5 and excludes Lert's report and testimony at trial.

    **F.**    **The Court GRANTS GM's MIL 6 to Exclude the Testimony and Report of HUJ's Proposed Expert Fernando Torres as to Profits Allegedly Attributable to GM's Use**

GM's final MIL is a *Daubert* motion to exclude portions of the testimony of one of HUJ's expert witnesses. As damages for HUJ's right of publicity claim, HUJ intends to seek (1) disgorgement of GM's profits and (2) recovery of a reasonable license fee that

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03790 AHM (JCx) | Date | May 31, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

GM would have had to pay to use Einstein's image. HUJ has submitted the report of its proposed expert Fernando Torres and intends to call on Torres to testify at trial regarding the estimated amount of damages. GM does not object to the admissibility of Torres's estimates regarding a reasonable license fee. GM does object, however, as to the admissibility of Torres's estimates regarding the profits GM allegedly generated from using Einstein's image in one advertisement for one of GM's Terrain model vehicles.

     As HUJ acknowledges, Torres determined that on average, GM made $22.73 in sales for every dollar it spent on advertising over a period of 18 months. (Opp. GM's MIL 6, p. 1.) Torres reached this conclusion by dividing the approximate amount GM made in sales during that 18-month period (about $115.46 billion dollars) by the approximate amount GM spent on advertising and sales promotion during that same period (about $5.1 billion dollars).[4] (Rummage Decl. GM's MIL 6, Exh. A, p. 14.) Torres then estimated that GM had spent about $865,584 on the Einstein ad[5] and multiplied that amount by $22.73 to conclude that the use of the image helped achieve "general sales of approximately $19,672,356." (Rummage Decl. GM's MIL 6, Exh. A, p. 20.) After accounting for GM's gross margin and deducting the approximate cost of the advertisement, Torres determined that GM made approximately $1,554,772 in profits from the use of the Einstein image. (Rummage Decl. GM's MIL 6, Exh. A, p. 20.)

     The Court finds that HUJ has failed to demonstrate the reliability of the methodology Torres used to calculate the effect of the Einstein ad on GM's profits. Torres's calculations rely on his conclusion that GM makes $22.73 in sales for every dollar it spends on ads. Torres does not cite to any article, study, or other literature, however, that stands for the proposition that if an entity spends money on advertising and generates sales, one can determine the monetary effect that the advertising had on those sales by simply dividing the total amount of sales by the amount spent on advertising. In its opposition, HUJ attaches a study that purportedly demonstrates that "although advertising had different impact on sales depending on the product, the industry, and

---

[4] The resulting Advertising-to-Sales ratio (5.1/115.46) is 4.4% . The reciprocal of that ratio (1/.044) is 22.73. Thus, Torres concluded that GM earned $22.73 in sales for every dollar it spent on advertising.

[5] GM contends that this estimate is inaccurate -- the actual cost of the ad was $466,365. (Silva Decl. Opp. GM's MIL 6, Exh. B, p. 26.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-03790 AHM (JCx) | Date | May 31, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

other variables, *the relationship itself* is predictable and constitutes an accepted fact of economic life and analysis." (Opp. GM's MIL 6 p. 4.) The Court has reviewed the study, however, and does not find that it anywhere supports Torres's method of determining the effect of advertising on sales (dividing profits over a certain period by the amount spent on advertising) nor that such methodology has been accepted by economists or other experts in the field. Without more support, the Court cannot accept Torres's assumption that a company's sales directly result from its advertising expenditure in this formulaic manner. Because the Court finds that Torres's methodology for determining GM's profits lacks reliability, and no jury could reasonably rely on it, the Court excludes the portion of his report and any corresponding testimony pertaining to that topic.

GM also argues that (1) Torres failed to consider that Advertising-to-Sales ratios vary depending on the type of advertising and vehicle model shown, and (2) Torres did not analyze the impact of the specific ad at issue. The Court has already concluded, however, that Torres's methodology for determining the effect of advertising on profits is unreliable. Thus, the Court need not determine whether Torres was required to narrow his calculations to the type of ad or specific ad at issue.

### IV. CONCLUSION

For reasons state above, the Court GRANTS the each party's motions *in limine*.

No hearing is necessary. Fed. R. Civ. P. 78. L.R. 7-15.

|  | : |  |
|---|---|---|
| Initials of Preparer | | SMO |