1  ROBERT C. O'BRIEN (SBN 154372)
   DAVID G. BAYLES (SBN 208112)
2  **ARENT FOX LLP**
   555 West Fifth Street, 48th Floor
3  Los Angeles, CA 90013-1065
   Telephone: 213.629.7400
4  Facsimile: 213.629.7401
   Email: obrien.robert@arentfox.com
5  Email: bayles.david@arentfox.com

6  ANTHONY V. LUPO (SBN 436364)
   **ARENT FOX LLP**
7  1050 Connecticut Avenue, NW
   Washington, D.C. 20036
8  Telephone: 202.857.6000
   Facsimile: 202.857.6395
9  E-mail: lupo.anthony@arentfox.com

10 Attorneys for Plaintiff
   THE HEBREW UNIVERSITY OF
11 JERUSALEM

12              UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14

15 THE HEBREW UNIVERSITY OF        Case No. CV10-3790-AHM (JCx)
   JERUSALEM,
16                                 **REVISED MEMORANDUM OF
17              Plaintiff,         CONTENTIONS OF FACT AND
                                   LAW OF PLAINTIFF THE
18 v.                              HEBREW UNIVERSITY OF
                                   JERUSALEM**
19 GENERAL MOTORS COMPANY,
                                   **LOCAL RULE 16-4**
20              Defendant.
                                   **FPTC Date:   August 8, 2012
21                                 Time:          3:00 p.m.
                                   Courtroom:     14**
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. LOCAL RULE 16-4.1 CLAIMS AND DEFENSES ...................................... 1

    (a) Summary Statement of Claims HUJ Plans to Pursue Against GM ................................................................................................... 1

    (b) The Elements Required to Establish Plaintiff's Claims ....................... 1

    (c) The Key Evidence Plaintiff Relies On For Each of Its Claims ............ 1

    (d)-(g) Sections (d)-(g) Are Inapplicable ............................................................. 5

    (h) Identification of Anticipated Evidentiary Issues and HUJ's Position on Those Issues ................................................................... 5

    (i) Identification of Any Issues of Law, and HUJ's Position on Those Issues ...................................................................................... 6

        1. The Court Should Instruct the Jury that, as a Matter of Law, It Is Conclusive That Einstein's Name, Image or Likeness Had Commercial Value at Death .............................. 6

        2. The Court Should Rule That The Subject Rights of Publicity Have Not Expired ..................................................... 7

        3. GM's First Amendment Affirmative Defense Should be Dismissed As A Matter of Law ............................................... 12

II. LOCAL RULE 16-4.3 BIFURCATION OF ISSUES ................................. 14

III. LOCAL RULE 16-4.4 JURY TRIAL ....................................................... 14

IV. LOCAL RULE 16-4.5 ATTORNEYS' FEES .............................................. 15

V. LOCAL RULE 16-4.6 ABANDONMENT OF ISSUES .............................. 15

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bolt. V. Merrimack Pharmaceuticals, Inc.,*
2005 WL 2298423 (E.D. Cal. 2005) .................................................. 9, 10

*Cardtoons L.C. v. Major League Baseball Players Ass'n,*
95 F.3d 959 (10th Cir.1996) ............................................................. 13

*Downing v. Abercrombie & Fitch,*
265 F.3d 994 (9th Cir. 2001) ......................................................... 10, 11

*Hilton v. Hallmark Cards,*
599 F.3d 894 (9th Cir. 2010) ........................................................... 13

*Narayan v. EGL, Inc.*
(9th Cir. (Cal.) 2010) ..................................................................... 5

*Prima v. Darden Restaurants,*
78 F. Supp.2d 337 (D.N.J. 2000)...................................................... 1

**STATE CASES**

*Brown v. Grimes,*
192 Cal. App.4th 265 (2nd Dist. 2011) ............................................ 10

*Burch v. George*
(Cal. 1994) 7 Cal.4th 246, 866 P.2d 92 ........................................... 14

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*
(2001) 25 Cal.4th 387 ............................................................. 1, 12, 13

*Hofer v. Carino*
(N.J. 1950) 4 N.J. 244, 72 A.2d 335................................................. 14

*Hurtado v. Superior Court,*
11 Cal.3d 574 (1974) ................................................................... 11

*KNB Enterprises v. Matthews,*
78 Cal. App. 4th 362 (2nd Dist. 2000) ............................................. 6, 7

*Tyne v. Time Warner Entertainment Co., L.P.*
901 So.2d 802 (Fla.,2005) .............................................................. 13

*Winter v. DC Comics*
30 Cal.4th 881 (Cal. 2003) ............................................................. 13

**FEDERAL STATUTES**

17 U.S.C.A. §§ 101 et seq. ............................................................. 8

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

17 U.S.C.A. § 302(a) ......................................................................... 8, 9

**STATE STATUTES**

Cal. Civ. Code § 3344.1 .................................................................... 1, 15

Cal. Civ. Code § 3344.1(g) ................................................................... 9

Cal. Civ. Code § 3344.1(h) ................................................................... 5

Cal. Civ.Code, § 3344.1, subd. (a)(1) ..................................................... 1

**RULES**

Local Rule 16-4.3 ............................................................................. 14

Local Rule 16-4.4 ............................................................................. 14

Local Rule 16-4.5 ............................................................................. 15

Local Rule 16-4.6 ............................................................................. 15

**OTHER AUTHORITIES**

2 J. Thomas McCarthy, Rights of Publicity and Privacy § 8:72 ..................... 12

## I.     LOCAL RULE 16-4.1 CLAIMS AND DEFENSES

(a)     **Summary Statement of Claims HUJ Plans to Pursue Against GM**:

**Claim 3 – Violation of Right of Publicity of Deceased Personality (CA Civ. Code § 3344.1)**:  GM's advertisement in the November 30, 2009, issue of People violated California Civil Code § 3344.1;

**Claim 4 – Violation of Right of Publicity of Deceased Personality (New Jersey Common Law)** – GM's advertisement in the November 30, 2009, issue of People violated the right of publicity of a deceased personality under New Jersey Common Law; and

(b)     **The Elements Required to Establish Plaintiff's Claims**:

**Claim 3 – Violation of Right of Publicity of Deceased Personality (CA Civ. Code § 3344.1)**:  (1) The defendant's use of a deceased person's name, voice, signature, photograph, or likeness in any manner, (2)  for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, (3) without the authorization of specified successors in interest, and (4) resulting damages.  Cal. Civ.Code, § 3344.1, subd. (a)(1); *Comedy III Productions, Inc. v. Gary Saderup, Inc.* (2001) 25 Cal.4th 387, 392.

**Claim 4 – Violation of Right of Publicity of Deceased Personality (New Jersey Common Law)**: (1) The plaintiff's ownership of an enforceable right in the identity or persona of the deceased celebrity, (2) the defendant's unauthorized use of some aspect of the decedent's identity or persona, and (3) a likelihood of damage to the commercial value of that persona resulting from the defendant's use. *Prima v. Darden Restaurants*, 78 F. Supp.2d 337, 349 (D.N.J. 2000).

(c)     **The Key Evidence Plaintiff Relies On For Each of Its Claims**:

**Claim 3 – Violation of Right of Publicity of Deceased Personality (CA Civ. Code § 3344.1)**:

(1) The defendant's use of a deceased person's name, voice, signature, photograph, or likeness in any manner.  Albert Einstein's Will, the Otto Nathan and

David Levy Affidavits and Trust Termination Agreement, Trial Exhibits 62 and 1. Facts admitted by GM in Section VI of the Pretrial Conference Order and stipulated by GM in Section VII of the Pretrial Conference Order and Trial Exhibits 18, 19, 23-24, the advertisement in question Trial Exhibit 28 (original People Magazine issue lodged with the Court), 58, 59, 75, 76, 77, 78-113, 205-211, 297-305, 308 and 316.  Testimony of  Pepi Yakirevich, Chaya Becker, Lisa Soboslai, Kevin Connelly, Mary Kubitskey, Beth Doxtader-Dumas, Laurie Ackerman and Eric Rachlis.  HUJ will also rely on Trial Exhibits 263-266.

(2)  for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services.  Facts admitted by GM in Section VI of the Pretrial Conference Order and Trial Exhibits 18, 19, 23-24, the advertisement in question Trial Exhibit 28 (original People Magazine issue lodged with the Court), 58, 59, 75, 76, 77, 78-113, 205-211, 297-305, 308 and 316.  Testimony of  Pepi Yakirevich, Chaya Becker, Lisa Soboslai, Kevin Connelly, Mary Kubitskey, Beth Doxtader-Dumas, Laurie Ackerman, Eric Rachlis, James Pampinella and F. Torres.

(2) If HUJ must prove commercial value in 1955 at the time of his death, HUJ will rely upon the facts admitted or stipulated to by GM in Sections VI and VII of the Pretrial Conference Order:

1.  Dr. Albert Einstein was a German-born theoretical physicist who is best known for his scientific theories including, but not limited to, his theory of relativity and unified field theory;

2.  Dr. Einstein was the winner of the Nobel Prize in Physics in 1921;

3.  In addition to his contributions to science, Dr. Einstein was an acclaimed political activist and humanitarian;

4.  As a result of his success in his various scientific and non-scientific endeavors, Dr. Einstein became respected and famous;

5.  Dr. Einstein lent his name to various charitable causes during his lifetime (see Pretrial Conference Order Section VII).

10.  In 1985, the American Friends of Hebrew University, acting on behalf of HUJ, retained the Roger Richman Agency as its agent to license Dr. Einstein's name, image, or likeness for third party use and to prevent others from doing so without HUJ's consent; and,

11. Even in death, Dr. Einstein remains a famous person.

HUJ will also rely on the testimony of Pepi Yakirevich, Chaya Becker, Josef Gras, Lisa Soboslai and Kevin Connelly.  HUJ will also rely on Trial Exhibit 145, video of Dr. Einstein promoting HUJ during his lifetime.  HUJ will also rely on New York Times articles dated March 16, 1953, and June 22, 1947, Trial Exhibits 39 and 40, respectively, showing Dr. Einstein lent his name to promote a medical school at Yeshiva University and prevented the use of his name by another organization.  HUJ will also rely upon its extensive current licensing and enforcement program which supports the inference of the commercial value at death.  HUJ will also rely on Trial Exhibits 18-20, 22-4, 28, 31-36, 46-49, 52-54, 60, 78-113, 117-121, 147-151, 153, 157, 163, 169, 175, 181, 186, 199-204, 236-242, 244-253 and 255-257.  HUJ will also rely on Trial Exhibits 263-266.

(3) without the authorization of specified successors in interest.  Facts admitted by GM in Section VI above and stipulated by GM in Section VII of the Pretrial Conference Order, testimony of Chaya Becker, Pepi Yakirevich, Lisa Sobaslai, Kevin Connelly, Mary Kubitskey, Beth Doxtader-Dumas, Laurie Ackerman, and Eric Rachlis, and trial exhibits showing HUJ's registration in California as successor-in-interest and Trial Exhibits 78-113, 205-211, 301-305 and 308.

(4) resulting damages.  Testimony of Mary Kubitskey, Chaya Becker, Pepi Yakirevich, Lisa Sobaslai, Kevin Connelly, F. Torres, and J. Pampinella and trial exhibits relied upon by Mr. Torres.  Trial Exhibits 18-20, 22-4, 28, 31-36, 46-49, 52-54, 60, 78-113, 117-121, 147-151, 153, 157, 163, 169, 175, 181, 186, 199-204, 236-242, 244-253 and 255-257.  HUJ will also rely on Trial Exhibits 263-266.

1  HUJ will prove damages attributable to the unauthorized use in California by the

2  testimony of Mr. Torres identified in his deposition, Report and Supplemental

3  Report dated July 13, 2012, Trial Exhibits 55-59 and 77, and the testimony of

4  Chaya Becker, Pepi Yakirevich, Lisa Soboslai and Kevin Connelly.

5  **Claim 4 – Violation of Right of Publicity of Deceased Personality (New**

6  **Jersey Common Law)**:

7  (1) The plaintiff's ownership of an enforceable right in the identity or

8  persona of the deceased celebrity.  The Will and the Otto Nathan and David Levy

9  Affidavits and Trust Termination Agreement, Trial Exhibits 62 and 1.  Last page of

10  Trial Exhibit 1, Levy Affidavit Exhibit, "The Mission of Our University" written by

11  Albert Einstein about HUJ.  Facts stipulated by GM in Section VI of the Pretrial

12  Conference Order, testimony of Pepi Yakirevich and Chaya Becker and Trial

13  Exhibits 37, 38 and 63-67.  HUJ will also rely on Trial Exhibits 263-266.

14  (2) the defendant's unauthorized use of some aspect of the decedent's identity

15  or persona.  Facts admitted by GM in Section VI of the Pretrial Conference Orer

16  and stipulated by GM in Section VII of the Pretrial Conference Order and the

17  advertisement in question Trial Exhibit 28 (original People Magazine issue lodged

18  with the Court); Testimony of Pepi Yakirevich, Chaya Becker, Lisa Soboslai,

19  Kevin Connelly, Mary Kubitskey, Beth Doxtader-Dumas, Laurie Ackerman, and

20  Eric Rachlis.  Trial Exhibits 78-113, 205-211, 301-305 and 308.

21  (3) a likelihood of damage to the commercial value of that persona resulting

22  from the defendant's use.  Testimony of Mary Kubitskey, Chaya Becker, Pepi

23  Yakirevich, Josef Gras, Lisa Soboslai, Kevin Connelly, F. Torres, and J. Pampinella

24  and trial exhibits relied upon by Mr. Torres.  Trial Exhibits 18-20, 22-4, 28, 31-36,

25  46-49, 52-54, 60, 78-113, 117-121, 147-151, 153, 157, 163, 169, 175, 181, 186,

26  199-204, 236-242, 244-253 and 255-257.  HUJ will also rely on Trial Exhibits 263-

27  266.

28

(d) – (g)       **Sections (d)-(g) Are Inapplicable.**

(h)       **Identification of Anticipated Evidentiary Issues and HUJ's Position on Those Issues.**

Certain Lifetime Exploitation Evidence Admissible.  The Court granted GM's Motion in Limine No. 3 excluding certain exhibits regarding Albert Einstein's lifetime exploitation of his rights of publicity on the basis that they are irrelevant to this action in light of the Court's finding in its Summary Judgment Order, March 16, 2012, Docket No. 137, that lifetime exploitation is not required under New Jersey common law.  However, according to GM, one of the elements HUJ must prove to establish a violation of the California statutory post mortem right of publicity is that Einstein's name, image or likeness had commercial value at his death and the Court did not consider whether or not the lifetime exploitation evidence was relevant to the issue of the commercial value of Einstein's name, image or likeness at his death.  *See* GM's Memorandum of Contentions of Law & Fact filed August 16, 2011, Docket No. 128, page 6, citing Cal. Civ. Code Section 3344.1(h); *see also* Court's Order Granting Motions in Limine, May 31, 2012, Docket No. 140, pages 7-8.  HUJ will prove that Dr. Einstein's name, likeness or image had commercial value at death if it is even required to do so (see Issue of Law No. 1 below), by inference from circumstantial evidence.  *See* 9th Circuit Model Jury Instruction 1.9, "circumstantial evidence is proof of one or more facts from which [the jury] could find another fact."  *See also Narayan v. EGL, Inc.* (9th Cir. (Cal.) 2010) 616 F.3d 895, 899-900 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions … A 'justifiable inference' is not necessarily the most likely inference or the most persuasive inference. Rather, 'an inference as to another material fact may be drawn in favor of the nonmoving party ... if it is 'rational' or 'reasonable.'")  HUJ's lifetime exploitation evidence supports the inference that Einstein's name, image or likeness *had commercial value at his death* and is therefore relevant to

this action and admissible for this limited purpose.

(i)     **Identification of Any Issues of Law, and HUJ's Position on Those Issues**.

1.     The Court Should Instruct the Jury that, as a Matter of Law, It Is Conclusive That Einstein's Name, Image or Likeness Had Commercial Value at Death.

The Court need not reach Evidentiary Issue No. 1 if it concludes as a matter of law based upon GM's admissions, that Einstein's name, image or likeness *had commercial value at his death*.  The following are facts that GM admits or stipulated to in the Pretrial Conference Order and from which the Court should instruct the Jury that Einstein's name, image or likeness *had commercial value at his death*:

1.  Dr. Albert Einstein was a German-born theoretical physicist who is best known for his scientific theories including, but not limited to, his theory of relativity and unified field theory;

2.  Dr. Einstein was the winner of the Nobel Prize in Physics in 1921;

3.  In addition to his contributions to science, Dr. Einstein was an acclaimed political activist and humanitarian;

4.  As a result of his success in his various scientific and non-scientific endeavors, Dr. Einstein became respected and famous;

5.  Dr. Einstein lent his name to various charitable causes during his lifetime (Pretrial Conference Order Section VII).

10.  In 1985, the American Friends of Hebrew University, acting on behalf of HUJ, retained the Roger Richman Agency as its agent to license Dr. Einstein's name, image, or likeness for third party use and to prevent others from doing so without HUJ's consent; and,

11. Even in death, Dr. Einstein remains a famous person.

*KNB Enterprises v. Matthews,* 78 Cal. App. 4th 362, 367 fn. 6 (2nd Dist.

2000), supports the inference that that Einstein's name, image and likeness had commercial value at his death.  [T]here is "commercial loss inherent in the use by another" of the name or identity of a famous or celebrated person."  *Id.*   GM admits, as it must, that Einstein "became respected and famous during life" and, even in death, Dr. Einstein "remains a famous person."  *See* Pretrial Conference Order Section VI, Items 4 and 11.  Accordingly, the only reasonable conclusion based thereon is that Einstein's name, image or likeness had commercial value at his death.

2.    The Court Should Rule That The Subject Rights of Publicity Have Not Expired.

In the Court's Summary Judgment Order, March 16, 2012, Docket No. 137, footnote 7, the Court stated, "The Court will defer ruling on the issue of the duration of the right of publicity until after it is determined whether the right actually passed to Plaintiff through Article 13."  After the Court determines that the right passed to HUJ, it should rule that the rights have not expired.

In footnote 7 of the Order, the Court then cited 2 J. Thomas McCarthy, Rights of Publicity and Privacy § 9:16 but the quote was cut off.  The language quoted from McCarthy in the footnote starts, "[m]ost commentators and judges take the position" and then the quote ended prematurely.  The following is the entire quote from the subject section of McCarthy starting with the language quoted in the Court's footnote:

Most commentators and judges take the position that it is not an appropriate common law function of a court to set a precise duration for the postmortem right of publicity. Judges feel that setting a specific number of years smacks too much of the dreaded "legislating" by judges under the guise of the common law. But, of course, all lawyers know that judges under their common law powers in fact do much "legislating," even though the act is usually well hidden by carefully chosen language. As the majority in the

California Lugosi case stated:

> May the remote descendants of historic public figures obtain damages for the unauthorized commercial use of the name and likeness of their distinguished ancestors? If not, where is the line to be drawn, and who should draw it? Assuming that some durational limitation would be appropriate, it has been suggested that the adoption of such a limitation would be "beyond the scope of judicial authority," and that "legislative action will be required …." Certainly the Legislature by appropriate amendment … might recognize a right of action on behalf of the family or immediate heirs of persons such as Lugosi. For the reasons stated above, however, we decline to adopt judicially any such rule.

On the other hand, the dissent in Lugosi disagreed, stating that it would be appropriate for a court to adopt by analogy the duration set in the federal copyright statute:

> The fixing of the precise date for the termination of the right of publicity is inherently a policy decision, one that the Legislature may be best able to determine. However, in the absence of legislative action, a limit must be prescribed. In fashioning common law rights and remedies in the past, this court has often considered federal and state statutory schemes for guidance …. Since the right of publicity recognizes an interest in intangible property similar in many respects to creations protected by copyright law…, that body of law is instructive.  The Copyright Act of 1976 (17 U.S.C.A. §§ 101 et seq.) provides that a copyright in new works shall be recognized during the author's life and for 50 years thereafter. (17 U.S.C.A. § 302(a).) That period represents a reasonable evaluation of the period necessary to effect the policies underlying the right of publicity. Therefore, I would hold that the right of publicity should be recognized during the subject's life and for 50 years thereafter.

1    While there is obviously no unanimity among either commentators or

2    legislators, the majority of commentators favors borrowing from federal

3    copyright law the duration of life plus 50 years (or 70 years) after death.

4    *Id*. (internal citations omitted).

5    Based upon the foregoing guidelines presented by Professor McCarthy, the

6    Court should adopt the well reasoned rule by the majority of commentators

7    favoring 70 years.  The Court should find that the right has not expired on the New

8    Jersey common law claim because (a) it should not determine the right has expired

9    when New Jersey has recognized the right, has not addressed duration, and the

10   duration necessary to protect the rights asserted in this action is within the realm of

11   a reasonable "durational limitation" that would be "appropriate" as noted by

12   McCarthy and (b) adopting 70 years is consistent with the majority of

13   commentators and their reference to the Copyright Act (now 70 years) and the

14   California statutory duration (also 70 years).

15   Another appropriate approach, with the same correct result in favor of

16   finding the duration sufficiently long here, would be to follow the rule of dépeçage.

17   New Jersey common law recognizes the right of publicity but does not address the

18   length of the right.  The relevant California statutory rule which provides a duration

19   sufficient to protect the New Jersey right—70 years—should apply.  *See* Cal. Civ.

20   Code Section 3344.1(g).  Of course, for the same reason, the claim in this action

21   based solely upon the California statutory right clearly endures today and beyond

22   because it will not be 70 years since Dr. Einstein died until 2025.

23   "Dépeçage is a curious invention of the courts (in California and elsewhere)

24   that 'erects a framework under which issues in a single case, arising out of a

25   common nucleus of operative facts, may be decided according to the substantive

26   law of different states."  *See Bolt. V. Merrimack Pharmaceuticals, Inc*., 2005 WL

27   2298423, 6-7 (E.D. Cal. 2005).  The underlying foundation for dépeçage is

28   accepted in California and requires that "a separate conflict of laws inquiry must be

1   made with respect to each issue in the case." *Id.  See also Brown v. Grimes*, 192

2   Cal. App.4th 265, 275-276 (2nd Dist. 2011) (discussing applicability of dépeçage in

3   choice-of-law analyses in California).

4   　　　As applied to rights of publicity cases, the conflict of laws analysis is set

5   forth in *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001).

6   "California applies a three-step "governmental interests analysis to choice-of-law

7   questions:  (1) "the court examines the substantive laws of each jurisdiction to

8   determine whether the laws differ as applied to the relevant transaction," (2) "if the

9   laws do differ, the court must determine whether a true conflict' exists in that each

10  of the relevant jurisdictions has an interest in having its law applied," and (3) "if

11  more than one jurisdiction has a legitimate interest … the court [must] identify and

12  apply the law of the state whose interest would be more impaired if its law were not

13  applied." *Id.*, at 1005.

14  　　　Applying the governmental interests test here, based upon the findings

15  already made and the issues briefed in the case, it is clear that (1) the laws of the

16  two jurisdictions are the same on the critical issue of the existence of a postmortem

17  right of publicity, but differ as to duration in the sense that California has identified

18  a duration and New Jersey has not.  (2) New Jersey has an interest in having its law

19  applied because the existence of a postmortem right of publicity is determined by

20  the state of domicile and California has an interest in having its law applied because

21  the infringement of the right occurred in the state (and the entire Country) by the

22  nationwide circulation of the infringing advertisement. (3) Since both jurisdictions

23  have an interest in having their law applied, and one jurisdiction (California)

24  provides greater clarity to the New Jersey law (identifying a duration that still

25  protects the person in whom the New Jersey law has an interest—Dr. Einstein, who

26  died domiciled in the State), then under the conflicts of laws and dépeçage rules,

27  the duration identified under the California law should be adopted by the Court for

28  the New Jersey common law claim, even though New Jersey law applied to

1   establish the existence of the common law claim in New Jersey.

2   The Court in *Downing* recognized that the case of *Hurtado v. Superior Court*,

3   11 Cal.3d 574 (1974) was the "primary case setting forth California's choice of law

4   rules." The *Downing* court quoted with approval the importance of determining if

5   application of the rule of the "foreign state … will further the interest of the foreign

6   state." *Downing*, *supra*., at 1006. The Court then discussed why it should apply

7   California law as to the Abercrombie right of publicity infringement even though

8   the plaintiffs were Hawaii residents. "By distributing the catalog within California,

9   Abercrombie was operating within its borders. Hawaii, on the other hand, like

10  Mexico in *Hurtado*, had no interest in limiting the extent of relief that its residents

11  could obtain for a wrongful act against them in California. It is even more clear in

12  this case because Hawaii did not place any limitation on recovery; instead it simply

13  did not provide for the extent of relief California does in this type of action. It is

14  pure fancy to believe that Hawaii would wish to restrict its residents from recovery

15  that others could obtain in California solely because it had not enacted a statute like

16  California's to complement its common law action for the same offense." *Id*. at

17  1007. Similarly, here, this Court should apply California law to establish the

18  duration of both the New Jersey and California right of publicity claims because the

19  distribution of *People* in California was sufficient to invoke the law and the

20  protections of California and New Jersey has not placed any durational limitation

21  on post mortem rights of publicity. Here, it would also "be pure fancy to believe

22  that [New Jersey] would wish to restrict [the holders of postmortem rights of

23  publicity of celebrities that died in that state] from recovery that others could obtain

24  in California solely because [New Jersey] had not enacted a statute like California's

25  to complement its common law action for the same offense." *Id*.

26  The Court should find that Dr. Einstein's New Jersey common law

27  postmortem rights of publicity endured to this day and, at a minimum, will not

28  expire before 2025—70 years after Dr. Einstein died. Similarly, the Court should

1  find that Dr. Einstein's California statutory postmortem right of publicity likewise

2  will not expire before 2025.

3      3.    GM's First Amendment Affirmative Defense Should be Dismissed As

4            A Matter of Law.

5      In this action, GM is asserting the First Amendment "transformative test"

6  identified in *Comedy III Prods., Inc. v. Saderup, Inc*., 25 Cal. 4th 387, 405 (2001),

7  as a defense to the subject infringement.  In support of its claim that it meets the

8  "transformative test," GM alleges that placing Dr. Einstein's face on the body of the

9  model in the advertisement adds "new expression, meaning or message" or is the

10  greater value to the advertisement than Dr. Einstein's fame.  *See* Pretrial

11  Conference Order, GM's Affirmative Defense.

12      However, the "transformative test" defense under the First Amendment

13  described by *Comedy III* is not available to GM.  The subject infringement in this

14  action is clearly an advertisement and commercial speech.  According to Professor

15  McCarthy, the "transformative test" defense under the First Amendment only

16  applies to visual artistic images which appear in a nonadvertising context.  "In the

17  author's view, the 'transformative' test [from *Comedy III*] is restricted to the kind

18  of case the court was faced with:  an artistic visual depiction of a celebrity image.

19  While the court mentioned other forms of expression in passing, it did so only by

20  way of analogy, not by an expansion of its rule to other situations.  Therefore, in

21  my view, the 'transformative' test is strictly limited to visual artistic images which

22  appear in a nonadvertising contest.  It certainly does not apply to challenged uses

23  such as advertisements, which are 'commercial speech.'  It is not a 'one test fits all'

24  analysis for any and all possible infringements of the right of publicity."  *See* 2 J.

25  Thomas McCarthy, Rights of Publicity and Privacy § 8:72, citing *Comedy III*.  The

26  transformative use defense from *Comedy III,* "does not concern commercial

27  speech."  *See Comedy III*, *supra*., at 396.  "Saderup's portraits of The Three Stooges

28  are expressive works and not an advertisement for or endorsement of a product."

1   *Id*; *see also Tyne v. Time Warner Entertainment Co., L.P.* 901 So.2d 802, 809 -

2   810 (Fla.,2005) ("In *Cardtoons L.C. v. Major League Baseball Players Ass'n,* 95

3   F.3d 959 (10th Cir.1996), the Tenth Circuit recognized that an 'expressive work'

4   protected by the First Amendment was not commercial speech because commercial

5   speech is best understood as speech that merely advertises a product or service for

6   business purposes. *Id.* at 970.  Similarly, in *Comedy III ...* the California Supreme

7   Court held that an artist who sold lithographs and t-shirts bearing the image of the

8   Three Stooges did not violate the plaintiffs' right of publicity because the case did

9   not concern commercial speech. "As the trial court found, [the defendant's] portraits

10  of The Three Stooges are expressive works and not an advertisement for or

11  endorsement of a product.")

12       In sum, the Court should dismiss GM's affirmative defense because the

13  infringement is in an advertisement and the defense is not available in advertising

14  uses and commercial speech pursuant to *Comedy III.*

15       Even if the Court finds that the First Amendment may be considered in this

16  case, the evaluation of the defense should be made by the Court.  The Court may

17  examine the advertisement and the image and conclude based on its own review, as

18  a matter of law, that there is no transformation of Dr. Einstein's image giving it a

19  new expression meaning or message or that the value of the advertisement results

20  primarily from the body of the model than the use of Dr. Einstein's face.  *See*

21  *Winter v. DC Comics* 30 Cal.4th 881, 891-892 (Cal. 2003) ("As in *Comedy III ...*

22  courts can often resolve the question as a matter of law simply by viewing the work

23  in question and, if necessary, comparing it to an actual likeness of the person or

24  persons portrayed").  For the reasons set forth below, "no trier of fact could

25  reasonably conclude that the [advertisement] was transformative" and the Court

26  should dismiss the defense.  *See Hilton v. Hallmark Cards*, 599 F.3d 894, 910 (9th

27  Cir. 2010).

28       First, the image that is Dr. Einstein—his face—is not substantively modified

1  other than to remove his hand from the image.  The image and the advertisement

2  are indistinguishable.  It sends no message and gives no new meaning.  Second, it is

3  the famous face of the aged Einstein, with his familiar knowing eyes and

4  wrinkles—the image of genius—that gives the advertisement its value.  These facts

5  are clear from comparing the image and the advertisement side by side.

6       Based upon the foregoing, it is therefore appropriate for the Court to

7  determine as a matter of law that GM has no First Amendment defense.

8  **II.     LOCAL RULE 16-4.3 BIFURCATION OF ISSUES.**

9       GM believes the Court should bifurcate liability and damages issues on the

10  grounds that testimony on damages issues would necessarily involve testimony

11  concerning HUJ's licensing practices.  GM believes the Court should exclude

12  testimony on licensing practices during the liability phase because of its potential to

13  prejudice the jury.  Further, HUJ seeks punitive damages, and courts commonly

14  bifurcate trial in cases involving punitive damages.  HUJ disagrees that it is

15  necessary to bifurcate any issue for trial on the basis of potential prejudice to the

16  jury because the determination of Dr. Einstein's probable intent is not a jury issue.

17  Otherwise, whether the Court hears the evidence at the same time as the jury or

18  decides to bifurcate the matter is fully within the discretion of the Court and HUJ

19  does not take a position on the matter.

20  **III.    LOCAL RULE 16-4.4 JURY TRIAL.**

21       The parties agree that construction of Albert Einstein's Will presents a

22  question of law for the Court.  *See* GM's opposition to HUJ Motion in Limine No.

23  1 [Dkt. 51] at 9 of 35 ("[T]he interpretation of the Einstein Will is a question of law

24  for the Court.  *Burch v. George* (Cal. 1994) 7 Cal.4th 246, 254, 866 P.2d 92, 96

25  ('The interpretation of a will or trust instrument presents a question of law.'); *Hofer*

26  *v. Carino* (N.J. 1950) 4 N.J. 244, 250, 72 A.2d 335, 338 ('The construction of deeds

27  and other writings in a cause rests with the court.  A question of construction is a

28  pure question of law to be decided by the court upon the terms of the instrument

itself.'")).  Accordingly, to the extent any will construction issues remain after the Court's decision on GM's Motion for Summary Judgment, the parties will try those issues to the Court.  Otherwise the remaining claims in the action are triable by a jury and HUJ made timely demand for trial by jury when it filed the Complaint. Whether the Court hears the evidence at the same time as the jury or decides to bifurcate the matter is fully within the discretion of the Court and HUJ does not take a position on the matter.

## IV.    LOCAL RULE 16-4.5 ATTORNEYS' FEES.

HUJ is entitled to attorneys' fees on its third claim for relief for violation of California Civil Code § 3344.1 which provides that the prevailing party shall be entitled to attorneys' fees and costs.  HUJ is entitled to attorneys' fees because GM allowed its agent Leo Burnett to use the image of Albert Einstein in reliance upon an indemnification by Getty Images to use the image, despite having readily available information that HUJ owns Dr. Einstein's right of publicity.  GM was aware that its use of Dr. Einstein's image was likely to result in litigation, as demonstrated by its willingness to pay to obtain defense and indemnity in the event of such litigation, but nonetheless proceeded to use the image of Albert Einstein without taking any steps whatsoever to determine whether or not it was necessary to obtain a license from HUJ.

## V.    LOCAL RULE 16-4.6 ABANDONMENT OF ISSUES.

HUJ has not abandoned any of the claims from its Complaint, though the Court dismissed the first and second claim for relief on summary judgment and HUJ has elected to pursue its fourth claim for relief for common law postmortem right of publicity under solely New Jersey law (and not under California common law).  GM has abandoned all but its 10th Affirmative Defense.

1

2

Dated:  July 30, 2012

ARENT FOX LLP

3

By: _____/s/ David G. Bayles_____

4

David G. Bayles
Attorneys for Plaintiff

5

THE HEBREW UNIVERSITY OF JERUSALEM

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28