ROBERT O'BRIEN (SBN 154372)
DAVID G. BAYLES (SBN 208112)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401
Email: obrien.robert@arentfox.com
Email: bayles.david@arentfox.com

ANTHONY V. LUPO (SBN 436364)
**ARENT FOX LLP**
1050 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone:  202.857.6000
Facsimile:   202.857.6395
Email: lupo.anthony@arentfox.com

Attorneys for Plaintiff
THE HEBREW UNIVERSITY OF JERUSALEM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE HEBREW UNIVERSITY OF JERUSALEM,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Case No.  CV10-3790-AHM (JCx)<br><br>**PLAINTIFF THE HEBREW UNIVERSITY OF JERUSALEM'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING DEFENDANT GENERAL MOTORS' FIRST AMENDMENT DEFENSE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>(Filed Concurrently with Declaration of David G. Bayles)<br><br>Hearing Date: September 10, 2012<br>Time:            10:00 a.m.<br>Courtroom:   14 |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

TECH/1170431.1

**TO DEFENDANT AND TO ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 10, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable A. Howard Matz in Courtroom 14 of the above-entitled Court, located at 312 North Spring Street, Room 170, Los Angeles, California 90012, plaintiff the Hebrew University of Jerusalem ("HUJ") will and does move for judgment as a matter of law on General Motors LLC ("GM")'s recently articulated First Amendment affirmative defense.

HUJ bases its Motion on this Notice; the attached Memorandum of Points and Authorities; the concurrently filed Declaration of David G. Bayles (with Exhibits 1 and 2); all pleadings and records on file in this action; any matters of which the Court may take judicial notice; and such other evidence and/or argument as may be presented to this Court at the hearing on this Motion.

GM only revealed the narrow nature of its First Amendment affirmative defense after the motion filing cutoff in this case, and then again in the Proposed Pretrial Conference order and its Memorandum of Contentions of Law and Fact, revised after the summary judgment order and filed on July 30, 2012. As a result, HUJ was unable to meet and confer with GM's counsel 10-days prior to filing the Motion so that this Motion could be heard before the scheduled trial date. *See* Declaration of David G. Bayles ¶¶ 2-3.

Dated: August 7, 2012                                **ARENT FOX LLP**

By:   /David G. Bayles/
ROBERT O'BRIEN
ANTHONY V. LUPO
DAVID G. BAYLES

Attorneys for Plaintiff
HEBREW UNIVERSITY OF
JERUSALEM

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

TECH/1170431.1

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. LEGAL STANDARD .............................................................................................1

III. ARGUMENT ..........................................................................................................2

    A. Comedy III's Transformative Test Does Not Apply to Commercial Speech Such As Advertisements Using a Celebrities' Likeness to Endorse or Otherwise Promote a Product..........................................................................................3

    B. GM's Use of Dr. Einstein's Likeness Was Not Transformative. .....................6

IV. CONCLUSION .......................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

**CASES**

Ackerman v. Ferry,
  2002 WL 31506931 (Cal. Ct. App. Nov. 12, 2002) ................................................ 5

Acosta v. City and County of San Francisco,
  83 F.3d 1143 (9th Cir. 1996) ................................................................................ 1

Aldrin v. Topps Co., Inc.,
  2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) ..................................................... 5

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) .............................................................................................. 1

Ansel Adams Pub. Rights Trust v. PRS Media Partners, LLC,
  2010 WL 4974114 (N.D. Cal. Dec. 1, 2010) ........................................................ 5

Arenas v. Shed Media US Inc.,
  2011 WL 8427612 (C.D. Cal. Aug. 22, 2011) ..................................................... 5

Browne v. McCain,
  611 F.Supp.2d 1062 (C.D. Cal. 2009) .................................................................. 5

Butkus v. Downtown Athletic Club of Orlando, Inc.,
  2008 WL 2557427 (C.D. Cal. April 2, 2008) ...................................................... 5

Central Hudson Gas & Elec. v. Public Serv. Comm'n,
  447 U.S. 557 (1980) .............................................................................................. 4

Comedy III Prods., Inc. v. Saderup, Inc.,
  25 Cal.4th 387 (2001) .................................................................................... passim

Daly v. Viacom, Inc.,
  238 F.Supp.2d 1118 (N.D. Cal. 2002) .................................................................. 5

Davis v. Electronic Arts, Inc.,
  2011 WL 2621626 (N.D. Cal. Jul. 5, 2011) ......................................................... 5

Densmore v. Manzarek,
  2008 WL 2209993 (Cal. Ct. App. May 29, 2008) ............................................... 5

Gionfriddo v. Major League Baseball,
  94 Cal.App.4th 400 (2001) ................................................................................... 5

Greenstein v. Grief Co.,
  2009 WL 117368 (Cal. Ct. App. Jan. 20, 2009) .................................................. 5

| | |
|---|---|
| *Hilton v. Hallmark Cards*,<br>599 F.3d 894 (9th Cir. 2010) | 5, 8 |
| *Hoffman v. Capital Cities/ABC, Inc.*,<br>255 F.3d 1180 (9th Cir. 2001) | 8 |
| *Ingerson v. Twentieth Century Fox Film Corp.*,<br>2003 WL 147771 (Cal. Ct. App. Jan. 21, 2003) | 5 |
| *Keller v. Electronics Arts, Inc.*,<br>2010 WL 530108 (N.D. Cal. Feb. 8, 2010) | 5 |
| *Kirby v. Sega of America, Inc.*,<br>144 Cal.App.4th 47 (2006) | 5 |
| *No Doubt v. Activision Publishing, Inc.*,<br>192 Cal.App.4th 1018 (2011) | 5 |
| *Presley v. Grant*,<br>2002 WL 31547000 (Cal. Ct. App. Nov. 18, 2002) | 5 |
| *Simblest v. Maynard*,<br>427 F.2d 1 (2nd Cir. 1970) | 1 |
| *Stewart v. Rolling Stone LLC*,<br>181 Cal.App.4th 664 (2010) | 5 |
| *Tyne v. Time Warner Entertainment Co., L.P.*,<br>901 So.2d 802 (Fla. 2005) | 6 |
| *Vogel v. Bennett*,<br>2009 WL 1678100 (Cal. Ct. App. June 17, 2009) | 5 |
| *Winter v. DC Comics*,<br>30 Cal.4th 881 (2003) | 5, 7 |

**OTHER AUTHORITIES**

| | |
|---|---|
| 2 J. THOMAS MCCARTHY, RIGHTS OF PUBLICITY AND PRIVACY § 8:72 | 6 |
| Federal Rule of Civil Procedure 50(a) | 1,2 |
| First Amendment | passim |

- 2 -

TECH/1170431.1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff the Hebrew University of Jerusalem ("HUJ") brings this motion pursuant to Federal Rule of Civil Procedure 50(a) for entry of judgment in its favor on Defendant General Motors LLC ("GM")'s sole affirmative defense to infringing Dr. Albert Einstein's right of publicity in utilizing his likeness in a 2009 advertisement. GM recently disclosed that it would only rely on one affirmative defense, the "transformative test" set forth in *Comedy III Prods., Inc. v. Saderup, Inc.*, 25 Cal.4th 387 (2001), for a First Amendment defense. *See* Proposed Pretrial Conference Or. at 9-10 (GM's Affirmative Defense). With the legal nature and scope of its sole affirmative defense thus circumscribed, the only relevant evidence – the 2009 advertisement and the subject photograph on which it is based – establishes that no reasonable jury could find for GM on this affirmative defense because *Comedy III* does not apply to commercial advertisements and, regardless, the advertisement's use of Dr. Einstein's likeness was not transformative as a matter of law.

## II. LEGAL STANDARD

A motion for judgment as a matter of law is appropriate if "the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion . . . ." *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1145 (9th Cir. 1996). "[T]he trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Simblest v. Maynard*, 427 F.2d 1, 4 (2nd Cir. 1970)("whether the evidence is such that, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached"). As Rule 50(a) puts it, if a defendant "has been fully heard on an issue," and the Court determines that "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the defendant on that affirmative defense, the Court may resolve that affirmative defense against the defendant and enter judgment on that defense as a matter of law. FED. R. CIV. P. 50(a).

Entry of such judgment now before trial is particularly warranted because, if granted, it

would streamline the presentation of evidence to the jury. *See* Fed. R. Civ. P. 50, 1991 Advisory Cmte Notes (Rule 50 "authorizes the court to perform its duty to enter judgment as a matter of law at any time during the trial, as soon as it is apparent that either party is unable to carry a burden of proof . . . . Such early action is appropriate when economy and expedition will be served"). At present, GM has indicated that it plans to present at trial a considerable amount of evidence in the form of e-mails and testimony about the "creative process" that went into fashioning the advertisement in question. Resolution of this Motion thus would expedite the trial by eliminating presentation of irrelevant evidence and narrow the scope of issues for the jury's consideration.

HUJ therefore asks this Court to enter judgment for it on GM's *Comedy III*-transformative First Amendment defense.

**III.   ARGUMENT**

It is undisputed in this action that GM used the image of Dr. Einstein in a "high impact" advertisement in the Sexiest Man of the Year issue of People Magazine, dated November 30, 2009, without the authorization of HUJ. The advertisement is a four-page fold-out, appears immediately behind the cover of the magazine, and advertises GM's TERRAIN sports-utility vehicle. (*See* Decl. Bayles, Ex. A). The advertisement contains an image of a shirtless, young male model wearing a pair of blue jeans with his underwear visible. A photograph of Dr. Einstein's head is superimposed on the male model's body. As set forth in the Proposed Pretrial Conference Order lodged with the Court on July 30, 2012, HUJ will prove at trial that the advertisement violates New Jersey common law postmortem rights of publicity and the California statutory postmortem rights of publicity owned by HUJ.

GM's sole defense to the infringement claims, as set forth in the Proposed Pretrial Conference Order, is that its conduct was privileged under the First Amendment-based "transformative test" identified in *Comedy III Prods., Inc. v. Saderup, Inc.*, 25 Cal.4th 387 (2001). In support of this affirmative defense, GM alleges that placing the body of the young male model in the subject advertisement adds "new expression, meaning or message," or is of greater value to the advertisement than that lent by Dr. Einstein's fame. *See* Proposed Pretrial Conference Or. at

9-10 (GM's Affirmative Defense).

HUJ requests that the Court enter judgment in its favor on GM's "transformative test" defense as a matter of law because (1) it does not apply in the context of commercial speech and, alternatively, (2) the undisputed facts clearly demonstrates that GM's advertisement is not transformative.

A.  *Comedy III's Transformative Test Does Not Apply to Commercial Speech Such As Advertisements Using a Celebrities' Likeness to Endorse or Otherwise Promote a Product.*

The California Supreme Court's "transformative test" does not apply to advertisements.

*Comedy III* made clear that its formulation of the "transformative test" was limited to the situation requiring the balancing of a celebrities' right to privacy and the heightened First Amendment interests at stake in the context of non-commercial speech, such as that found in entertainment, creative works of art, literature, satire, etc. This limitation was made clear when the California Supreme Court was presented with the reverse contention in that case – namely, that a *claim* under California's right of publicity statute applied only to the use of celebrity likenesses in the context of advertisements and other forms of commercial speech. 25 Cal.4th at 394-95. Because the court in *Comedy III* had held that defendant's "lithographs and T-shirts did not constitute an advertisement, endorsement, or sponsorship of any project," *id.* at 393, the defendant argued that "the statute therefore [did] not apply in the case at bar." *Id.* at 394. The California Supreme Court rejected the argument, noting that the statute barred the use of a celebrity's likeness "either (1) on or in a product, *or* (2) in advertising or selling a product." *Id.* at 395 (emphasis in original). Importantly for purposes of this case, the California Supreme Court then observed that the "two uses are not synonymous: in the apt example given by the Court of Appeal, there is an obvious difference between 'placing a celebrity's name on a 'special edition' of a vehicle, and using that name in a commercial to endorse or tout the same or another vehicle." *Id.* at 395.

Elaborating on this point, the California Supreme Court noted that its analysis on the proper balancing test to use would have been different if it concerned commercial speech such as

with advertisements:

> The right of publicity is often invoked in the context of commercial speech when the appropriation of a celebrity likeness creates a false and misleading impression that the celebrity is endorsing a product. Because the First Amendment does not protect false and misleading commercial speech, and because even non-misleading commercial speech is generally subject to somewhat lesser First Amendment protection, *the right of publicity may often trump the right of advertisers to make use of celebrity figures.*
>
> But the present case does not concern commercial speech. As the trial court found, [defendant's] portraits of The Three Stooges are expressive works and not an advertisement for or endorsement of a product.

*Id.* (emphasis added).

That the transformative test does not apply in the context of commercial speech is understandable given that commercial speech is afforded lesser protection under the First Amendment than non-commercial speech. *See Central Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 U.S. 557, 566 (1980). Obviously, the fact that such lesser First Amendment interests are at play with commercial speech would wildly skew the delicate balancing of interests that *Comedy III* performed to articulate the "transformative test." The *Comedy III* court itself noted that the particular First Amendment interests it was balancing were "to preserve an uninhibited marketplace of ideas" and "to foster a fundamental respect for individual development and self-realization," 25 Cal.4th at 396-97, interests that are far-removed and far-less-weighty than that implicated by advertisements used to hawk goods to consumers. *Id.* at 406 (observing "the less-than-compelling interests advanced by the right of publicity *outside the advertising context*" (emphasis added)).

That *Comedy III*'s "transformative test" is limited to non-commercial speech has not gone unnoticed by the courts. In *none* of the seventeen state and federal California cases decided since *Comedy III* that have cited to and applied *Comedy III*'s "transformative test" has the test been used in the context of pure commercial speech such as advertisements promoting or touting a

product.[1] Instead, in each instance the test was applied to a defendant's placement of a celebrity's voice, image, likeness, etc., on or in a product.

Indeed, in each instance in which a defendant has sought to utilize *Comedy III*'s "transformative test" in the context of a commercial advertisement, the courts have rejected the defense. *See Ansel Adams Pub. Rights Trust v. PRS Media Partners, LLC*, 2010 WL 4974114, at *4 (N.D. Cal. Dec. 1, 2010)("Defendant's use of the Ansel Adams name and likeness [on posters and prints] was use for purely commercial purposes – to market and sell 'Ansel Adams' prints and posters. Based on the Trust's allegations, the First Amendment does not bar its right of publicity claim"); *Butkus v. Downtown Athletic Club of Orlando, Inc.*, 2008 WL 2557427, at *10 (C.D. Cal. April 2, 2008)(use of former football player's name to promote award handed out by athletic club was "not entitled to First Amendment protection" because it created "the false impression that Butkus continues to endorse [the club's] presentation of the award"); *Presley v. Grant*, 2002 WL 31547000, at *8 (Cal. Ct. App. Nov. 18, 2002)(holding that defendant's use of celebrity's name and image in promotional advertisements for its book "were commercial speech, not entitled to First Amendment protection").

Noted treatises similarly agree that *Comedy III*'s "transformative test" does not apply to

---

[1] *See Winter v. DC Comics*, 30 Cal.4th 881, 885 (2003)(images used in comic books); *Kirby v. Sega of America, Inc.*, 144 Cal.App.4th 47, 51-52 (2006)(images used in video game); *Gionfriddo v. Major League Baseball*, 94 Cal.App.4th 400, 406 (2001)(images used in televised games and on websites); *No Doubt v. Activision Publishing, Inc.*, 192 Cal.App.4th 1018, 1022 (2011)(images used in video game); *Densmore v. Manzarek*, 2008 WL 2209993, at * 28-29 (Cal. Ct. App. May 29, 2008)(use of voice in concert performance); *Ackerman v. Ferry*, 2002 WL 31506931, at *19 (Cal. Ct. App. Nov. 12, 2002)(use of name in magazine); *Stewart v. Rolling Stone LLC*, 181 Cal.App.4th 664, 671 (2010)(names used in four-page editorial); *Vogel v. Bennett*, 2009 WL 1678100, at *1 (Cal. Ct. App. June 17, 2009)(use of image in videos and DVDs); *Greenstein v. Grief Co.*, 2009 WL117368, at *1 (Cal. Ct. App. Jan. 20, 2009)(use of image in reality-based television program); *Ingerson v. Twentieth Century Fox Film Corp.*, 2003 WL 147771, at *1 (Cal. Ct. App. Jan. 21, 2003)(use of voice in reality-based television show); *Hilton v. Hallmark Cards*, 599 F.3d 894, 899 (9th Cir. 2010)(image used in a birthday card); *Arenas v. Shed Media US Inc.*, 2011 WL 8427612, at *1 (C.D. Cal. Aug. 22, 2011)(image and name used in television show); *Keller v. Electronics Arts, Inc.*, 2010 WL 530108, at *1 (N.D. Cal. Feb. 8, 2010)(image used in video game); *Daly v. Viacom, Inc.*, 238 F.Supp.2d 1118, 1121 (N.D. Cal. 2002)(use of image in film and film-related materials); *Aldrin v. Topps Co., Inc.*, 2011 WL 4500013, at *1 (C.D. Cal. Sept. 27, 2011)(image used on collector cards); *Davis v. Electronic Arts, Inc.*, 2011 WL 2621626, at *1 (N.D. Cal. Jul. 5, 2011)(use of image in video game); *Browne v. McCain*, 611 F.Supp.2d 1062, 1066 (C.D. Cal. 2009)(use of voice in political campaign advertisement).

commercial speech such as that of advertisements for a product. Professor McCarthy has commented that the "transformative test" defense only applies to visual artistic images which appear in a non-advertising context:

> In the author's view, the 'transformative' test [from *ComdeyIII*] is restricted to the kind of case the court was faced with: an artistic visual depiction of a celebrity image. While the court mentioned other forms of expression in passing, it did so only by way of analogy, not by an expansion of its rule to other situations. Therefore, in my view, the 'transformative test' is strictly limited to visual artistic images which appear in a non-advertising context. It certainly does not apply to challenged uses such as advertisements, which are 'commercial speech.' It is not a 'one test fits all' analysis for any and all possible infringements of the right of publicity.

2 J. THOMAS MCCARTHY, RIGHTS OF PUBLICITY AND PRIVACY § 8:72 (2nd ed. 2012).

Case authorities from other jurisdictions have likewise construed *Comedy III*'s "transformative test" as confined to instances of non-commercial speech. *See Tyne v. Time Warner Entertainment Co., L.P.*, 901 So.2d 802, 809-10 (Fla. 2005)(observing that "in *Comedy III* . . . the California Supreme Court held that an artist who sold lithographs and t-shirts bearing the image of the Three Stooges did not violate the plaintiff's right of publicity because the case did not concern commercial speech").

It is for this reason that the "transformative test" defense described in *Comedy III* is not available to GM as a matter of law. GM's use of Dr. Einstein's image is clearly an advertisement to tout or promote its TERRAIN vehicle and therefore commercial speech. Accordingly, the Court should enter judgment in HUJ's favor on GM's First Amendment-based "transformative test" affirmative defense.

B.  *GM's Use of Dr. Einstein's Likeness Was Not Transformative.*

Even if the Court finds that the First Amendment-based "transformative test" may be considered in this case, the Court should also rule as a matter of law that GM's use of Dr. Einstein's image in its advertisement is not transformative.

To begin, the evaluation of the defense should be made by the Court. The Court may examine the advertisement and the photograph from which it was created and conclude based on its own review that, as a matter of law, there is no transformation of Dr. Einstein's image giving it a new expression meaning or message of that the value of the advertisement results primarily from the body of the young model than the use of Dr. Einstein's face. *See Winter*, 30 Cal. 4th at 891 ("As in *Comedy III* ... courts can often resolve the question as a matter of law simply by viewing the work in question and, if necessary, comparing it to an actual likeness of the person or persons portrayed.")

*Comedy III* noted that whether use of a celebrity's likeness is sufficiently "transformative" to entitle it to First Amendment protection turns on "whether the celebrity likeness is one of the 'raw materials' from which" the work in question was "synthesized, or whether the depiction or imitation of the celebrity is the very sum and substance of the work in question." 25 Cal.4th at 406. *Comedy III* further noted that a "subsidiary inquiry" that "courts may find useful" is "does the marketability and economic value of the challenged work derive primarily from the fame of the celebrity depicted." *Id.* at 407. If not, then the work in question is sufficiently transformative.

Here there is little question that GM's use of Dr. Einstein's fame is the very sum and focus of the advertisement. First, the image that is Dr. Einstein – his face – is not substantively modified other than to remove his hand from the Getty Images' photograph. The image and the advertisement are indistinguishable. It sends no message and gives no new meaning. Second, it is the famous face of the aged Einstein, with his familiar knowing eyes, bushy mustache, unkempt flowing grey hair, and wrinkles – the image of a genius – that gives the advertisement its value. These facts are clear from comparing the image and the advertisement side by side.

In this respect two Ninth Circuit decisions with facts closely analogous to those in this case are particularly instructive.

In *Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010), Hallmark made a birthday card featuring "an oversized photograph of Hilton's head" superimposed on "a cartoon waitress's body." *Id.* at 899. The Ninth Circuit held that, despite some differences due to the added element of the cartoon image, the "basic setting" was the same as an episode from Hilton's television show where she was depicted as "born to privilege, working as a waitress." *Id.* at 911. As a result, the court ruled that the defendant could not show that its use of Hilton's image was transformative as a matter of law. *Id.* at 911-12.

Likewise, in *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001), a magazine published an article entitled "Grand Illusions," which featured digitally altered images of celebrities from famous films. Specifically, computer artists composed modified shots of various actors and actresses and then superimposed them on models' bodies' wearing famous designer's spring fashions. Thus, a still shot of actor Dustin Hoffman's head from the movie "Tootsie" was transposed on a model's body so that he appeared to be wearing a Richard Tyler evening gown and Ralph Lauren heels. In the course of ruling that the defendant's use of Hoffman's image was protected under the First Amendment, the Ninth Circuit explained its conclusion would have been different had the celebrity's likeness been used in a typical commercial advertisement:

> If the altered photograph had appeared in a Ralph Lauren advertisement, then we would be facing a case much like those [that have found commercial misappropriation]. But [the magazine] did not use Hoffman's image in a traditional advertisement printed merely for the purpose of selling a particular product. . . . Nor did the article simply advance a commercial message. "Grand Illusions" appears as a feature article on the cover of the magazine and in the table of contents. It is a complement to and a part of the issue's focus on Hollywood's past and present. Viewed in context, the article as a whole is a combination of fashion photography, humor, and visual and verbal editorial comment on classic films and famous actors. Any commercial aspects are "inextricably intertwined" with expressive elements, and so they cannot be separated out "from the fully protected whole." "There are common-sense differences between speech that does no more than propose a commercial transaction and other varieties," and common sense tells us this is not a simple advertisement.

*Id.* at 1185-86. A common sense perspective on GM's advertisement likewise shows that its misappropriation of Dr. Einstein's image was for nothing more than a commercial purpose—to promote brand awareness of the new TERRAIN vehicle, and ultimately, increase sales—and not some "larger meaning" which GM's counsel may attempt to argue *post-hoc* (but which "meaning" counsel has not yet even attempted to describe).

Gazing at the advertisement itself, it is clear that the supposed "raw material" supplied to it by Dr. Einstein's celebrity – his intelligence, especially in connection with theories of physics utilizing complex mathematical formulas – goes well beyond "synthesization" and is instead the key, central component that dominates the advertisement's message. The visual image juxtaposing Dr. Einstein's face to the body of a young male model is notable for also highlighting Dr. Einstein's famous formulation of mass energy equivalence – $E=mc^2$ -- as a tattoo on the body of the young model. This emphasis on Dr. Einstein's celebrity for intelligence and mathematics is then carried over and is the centerpiece of the advertisement. The advertisement makes use of the word "idea" "ideas" or "thinking" repeatedly, often in conjunction with mathematical references such as "we gave it more ideas per square inch" or "packed with really big ideas" (an obvious reference to Dr. Einstein's groundbreaking literal big ideas regarding the universe). In short, Dr. Einstein's likeness was not transformed by GM but appropriated and used for what is well-known for – his genius intellect in the world of mathematics and physics.

**IV.  CONCLUSION**

Based upon the foregoing, it is therefore appropriate for the Court to determine as a matter of law that GM has no First Amendment affirmative defense for its commercial speech, and that, in the alternative, GM's use of Dr. Einstein's image was not transformative.

| | | |
|---|---|---|
| 1 | Dated: August 7, 2012 | **ARENT FOX LLP** |
| 2 | | |
| 3 | | By: _____/David G. Bayles/_____ |
| 4 | | ROBERT O'BRIEN<br>DAVID G. BAYLES<br>ANTHONY V. LUPO |
| 5 | | |
| 6 | | Attorneys for Plaintiff<br>THE HEBREW UNIVERSITY OF JERUSALEM |

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

TECH/1170431.1

- 10 -