O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs: Attorneys **NOT** Present for Defendants:

**Proceedings:** IN CHAMBERS (No Proceedings Held)

## I. Introduction

Defendant General Motors LLC ("GM") used an image of Albert Einstein in a November 2009 advertisement for its 2010 Terrain vehicle. The ad depicted Einstein's face digitally pasted onto a muscled physique, accompanied by the written message "Ideas are sexy too." The ad ran in only one issue of *People* magazine. Plaintiff Hebrew University of Jerusalem ("HUJ"), which claims to own Einstein's right of publicity as a beneficiary under Einstein's will and thus exclusive control of the exploitation of his name and likeness, brought suit against GM for this unauthorized use of Einstein's image.[1]

On March 16, 2012, the Court issued an order permitting HUJ to proceed to trial to attempt to prove (1) that Albert Einstein would have transferred his postmortem right of publicity under New Jersey law had he been aware that such a right of publicity existed at

[1] Article 13 of Einstein's will states: "I give and bequeath all of my manuscripts, copyrights, publication rights, royalties and royalty agreements, and all other literary property and rights, of any and every kind or nature whatsoever, to my Trustees hereinafter named, IN TRUST, to hold the same for a term measured by the lives of my secretary Helena Dukas, and my step-daughter, Margot Einstein.... Upon the death of the said Helena Dukas and the said Margot Einstein, this trust shall terminate, and thereupon all funds or property, if any, still held in this trust, including all accrued, accumulated and undistributed income and all literary rights and property, shall pass and be distributed to Hebrew University...."

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

the time of his death and (2) that GM had violated that right. *See Hebrew Univ. of Jerusalem v. Gen. Motors LLC*, 2012 WL 907497, at *12-14 (C.D. Cal. March 16, 2012).[2] GM has asserted that even if HUJ could prove both Einstein's intent with respect to the right of publicity and GM's violation of that right, it should not be entitled to recover damages because too much time elapsed between Einstein's death in 1955 and the filing of this lawsuit in 2010.

Now before the Court is HUJ's motion[3] requesting that the Court find that the duration of the postmortem right of publicity is indefinite under New Jersey common law or, in the alternative, that it lasts for 70 years after death, as is the case with copyrights under the federal Copyright Act. In essence, HUJ seeks a ruling from this California federal court as to what New Jersey's highest court would likely determine to be the postmortem duration of that state's common law right of publicity.[4] For the reasons set forth below, the Court concludes that the New Jersey Supreme Court would likely find that the postmortem right of publicity endures for no more than 50 years after death. As to HUJ's cause of action under California's right of publicity statute (Civil Code §3344.1), the Court also rules that the rights encompassed in that statute do not apply to Plaintiff.

## II. Facts and Procedural History

The facts of this case are set forth in the Court's summary judgment order, *Hebrew University of Jerusalem v. General Motors LLC*, 2012 WL 907497 (C.D. Cal. March 16, 2012), and therefore only a brief review of the background is presented here.

---

[2] In that order, the Court also granted summary judgment in favor of GM on HUJ's causes of action under the Lanham Act (15 U.S.C. § 1125(a)) and California's Unfair Competition Law, but denied summary judgment on HUJ's remaining claims based on California's right of publicity statute (Civil Code § 3344.1) and New Jersey's common law right of publicity.

[3] Dkt. 154.

[4] Given that New Jersey courts have not decided the duration of that state's postmortem right of publicity, this Court is called on to "predict how the highest state court would decide the issue." *In re Kekauoha-Alisa*, 674 F.3d 1083, 1087-88 (9th Cir. 2012).

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 2 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

Nothing in Albert Einstein's will specifically mentioned any right of publicity, and during his lifetime he did not claim or receive any monetary compensation for the use of his persona. Applying New Jersey law (because Einstein was domiciled there at the time of his death in 1955), this Court concluded that New Jersey would recognize a common law postmortem right of publicity without the requirement of lifetime exploitation. *Id.* at *6, 10. The Court therefore found that Einstein had a right of publicity that survived his death, but that the remaining question—whether he would have intended to transfer that right to HUJ through a provision in his will—was a factual question. *Id.* at *13-14. For that reason, the Court held, HUJ was entitled to prove Einstein's intent at trial.

For the present motion, the Court assumes without deciding that HUJ succeeded in proving that Einstein would have intended to bequeath his right of publicity to HUJ. The dispositive question now before the Court is the duration of that right. For how many years may HUJ enforce Einstein's common law, postmortem right of publicity?

## III. Legal Standard

Although HUJ has styled this motion as one for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), the Ninth Circuit has made clear that Rule 50(a) only applies after a jury trial has begun. *See McSherry v. City of Long Beach*, 423 F.3d 1015, 1019-21 (9th Cir. 2005) ("We hold that the district court may not grant a motion filed under Rule 50 prior to the presentation of any evidence in a case."). The Court therefore treats this motion as a motion for summary adjudication pursuant to Rule 56. *See id.* at 1021 (treating improper Rule 50 motion as a motion for judgment on the pleadings); *see also* Fed. R. Civ. P. 12(d) (stating that when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"); Fed. R. Civ. P. 56(a) (permitting summary judgment on "part of" a claim).

Federal Rule of Civil Procedure 56 provides for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. " The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 3 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

For the limited purpose of this motion, there are no factual issues in dispute. The parties agree that Einstein died while domiciled in New Jersey and that 55 years passed between his death in 1955 and 2010, when HUJ filed this lawsuit. The parties disagree as to whether the duration of the right of publicity extends as long as 55 years or even longer. This is a question that may properly be decided as a matter of law.

## IV. Analysis

J. Thomas McCarthy, the leading commentator on the right of publicity, has characterized the determination of the right's duration as "by nature almost arbitrary." 2 J. Thomas McCarthy, *Rights of Publicity & Privacy* § 9:16 (2d ed. 2012) (henceforth, "*McCarthy*"). An "almost arbitrary" ruling is unacceptable, however. The following analysis seeks to avoid one.

### A. New Jersey Law Determines the Duration of the New Jersey Right of Publicity

The right of publicity is a property right under both New Jersey common law and California statutory law. *McFarland v. Miller*, 14 F.3d 912, 917 (3d Cir. 1994) ("In New Jersey, the right of publicity is a property right."); *Estate of Presley v. Russen*, 513 F. Supp. 1339, 1355 (D.N.J. 1981) (holding that the right of publicity is descendible); Cal. Civ. Code § 3344.1(b) ("The rights recognized under this section are property rights, freely transferable or descendible . . . .").

The duration of California's statutory postmortem right of publicity is 70 years. Cal. Civ. Code § 3344.1(g). But the right is limited to California domiciliaries. *See* Cal. Civ. Code § 946 ("If there is no law to the contrary, in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile."); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1147-49 (9th Cir. 2002) (concluding that § 946 applies in conjunction with § 3344.1 and that therefore the right of

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 4 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

publicity provided by § 3344.1 does not apply to persons domiciled outside California, despite the statute's applicability to acts occurring in California); *see also Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 1000 (9th Cir. 2012) (confirming that the law of the state where the deceased owner of the right of publicity was domiciled controls whether the right may be posthumously enforced).

As previously noted, Einstein died while domiciled in New Jersey. HUJ's claim pursuant to Cal. Civ. Code § 3344.1 therefore fails. For the same reason, unless sound public policy and the weight of authority establish otherwise, it makes no sense to apply the California statute's 70 year postmortem durational limit—which is part and parcel of the substantive right—to a right arising solely out of the New Jersey common law, and there is no legal principle requiring this Court to do so.[5]

### B. Status of Existing New Jersey Law Concerning the Duration of the Postmortem Right of Publicity

[5] HUJ argues that the judicially-created doctrine of "dépeçage" should apply to determine the duration of New Jersey's postmortem right of publicity. Pursuant to that doctrine, courts "erect[] [a] framework under which different issues in a single case, arising out of a common nucleus of operative facts, may be decided according to the substantive law of different states." *Putnam Res. v. Pateman*, 958 F.2d 448, 465 (1st Cir. 1992). In other words, a choice of law analysis may be applied to each issue in a case. HUJ argues that despite this Court having already determined the very existence of the right of publicity under New Jersey law, the Court should apply dépeçage and determine the right's duration pursuant to California law. The Court disagrees. Dépeçage is inappropriate because the existence and duration of the right of publicity are not separate issues. They are simply two aspects of the single question before the Court—whether HUJ may enforce Einstein's right of publicity. Moreover, it is clear from California and Ninth Circuit cases that there is no common law postmortem right of publicity in California and that California's postmortem right of publicity statute does not apply to non-domiciliaries. *See Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 391 (Cal. 2001) (discussing *Lugosi v. Universal Pictures*, 25 Cal. 3d 813 (Cal. 1979), which likened the common law right of publicity to the right of privacy and held that it was not descendible). Thus, even if the Court performed a choice of law analysis pursuant to the dépeçage doctrine, there would be no applicable California law to apply. The Ninth Circuit's recent decision in *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC* reinforces this conclusion. 692 F.3d 983, 986, 999-1000 (9th Cir. 2012) (confirming that California law does not govern the right of publicity of a personality who was domiciled outside California at the time of her death).

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 5 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

Only one court in New Jersey, a federal district court, has ever discussed the question of duration, and it did not decide the issue. *See Estate of Presley*, 513 F. Supp. at 1355 n.10. The primary question in *Presley* was whether New Jersey recognized a descendible, postmortem right of publicity. The court found that it does, holding that "Elvis Presley's right of publicity survived his death and became part of Presley's estate." *Id.* at 1354-55. With respect to the duration of the right of publicity, however, the *Presley* court merely stated that the state legislature should determine that question, although it also noted that the federal Copyright Act, which at that time provided for a copyright term of life plus 50 years, could provide guidance. *Id.* at 1355 n.10. No state court in New Jersey has ever addressed the issue.

Although the New Jersey Legislature has considered at least two bills that would create a statutory right of publicity, it has thus far not seen fit to enact such a right. *See* A.3536, 213th Legis. (N.J. 2008) (proposing the "Celebrity Image Protection Act," with a postmortem duration of 70 years); A.4476, 212th Legis. (N.J. 2007) (same). There is nothing stopping HUJ from petitioning the New Jersey Legislature to pass a statute, with retroactive applicability, that would create a definitive postmortem right of publicity with the extended duration that HUJ seeks here.

## C. Aspects of the Right of Publicity that Should Affect Its Duration

### 1. The Right of Publicity's Origins in the Right of Privacy

"The 'right of publicity' 'signif[ies] the right of an individual, especially a public figure or a celebrity, to control the commercial value and exploitation of his name and picture or likeness and to prevent others from unfairly appropriating this value for commercial benefit.'" *McFarland*, 14 F.3d at 918-19 (interpreting New Jersey law and quoting *Estate of Presley*, 513 F. Supp. at 1353); *see also McCarthy*, § 1:3 (defining the right of publicity as "the inherent right of every human being to control the commercial use of his or her identity"); Restatement (Third) of Unfair Competition § 46 cmt. d ("The right of publicity protects the commercial value of a person's identity.")

The right of publicity originally developed within the array of privacy rights that are considered personal, are based on dignitary interests and are not descendible. *See*

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 6 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

*Hart v. Elec. Arts, Inc.*, 808 F. Supp. 2d 757, 772 (D.N.J. 2011) (discussing the right's origins as one of four privacy-based torts proposed in a 1960 article by Dean William Prosser); *see also McCarthy*, § 9:6 (noting that privacy rights "die with the person"); William L. Prosser, *Privacy*, 48 Calif. L. Rev. 383 (1960).

Now, however, the right of publicity is widely understood, including in New Jersey, to be akin to intellectual property. *Hart*, 808 F. Supp. at 772 (citing *Canessa v. J.I. Kislak, Inc.*, 235 A.2d 62, 76 (N.J. Super. Ct. Law Div. 1967)); *see also McCarthy*, § 9:6 (noting that the right of publicity, like trademark and copyright, recognizes "legally enforceable rights in the commercial value of intangible property"). Additionally, "[w]ith its emphasis on commercial interests, the right of publicity also secures for plaintiffs the commercial value of their fame and prevents the unjust enrichment of others seeking to appropriate that value for themselves." Restatement (Third) of Unfair Competition § 46 cmt. c; *see also Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 576 (1977) ("The rationale for (protecting the right of publicity) is the straightforward one of preventing unjust enrichment by the theft of good will. No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay." (internal quotation marks and citation omitted)).

New Jersey has adopted the Restatement (Second) of Torts, including the placement of its "common law privacy right of appropriation" in section 652C, which has been treated by courts as equivalent to the right of publicity. *See Hart*, 808 F. Supp. 2d at 772-773 (discussing Third Circuit's interchangeable use of "right of publicity" and "appropriation" and observing that New Jersey courts have come to regard the right of publicity as a property right, not one for injury to the person); *see also Tellado v. Time-Life Books, Inc.*, 643 F. Supp. 904, 907-08 (D.N.J. 1986) (citing *Bisbee v. John C. Conover Agency, Inc.*, 452 A.2d 689 (N.J. Super. Ct. App. Div. 1982)). The American Law Institute also removed the discussion of the right of publicity from its sections on privacy and placed it in the Restatement (Third) of Unfair Competition. *See ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 930 (6th Cir. 2003). Although New Jersey has not formally adopted the Restatement (Third) of Unfair Competition, *Hart*, 808 F. Supp. 2d at 791 n.37, its incorporation of the Second Restatement of Torts indicates that New Jersey courts' analysis would likely align with that of the Third Restatement of Unfair Competition, which notes that "'courts may be properly reluctant to adopt a broad

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 7 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

construction of the publicity right'" because of its "'less compelling'" rationales than those of other intellectual property rights. *See ETW Corp.*, 332 F.3d at 930-31 (quoting Restatement (Third) of Unfair Competition § 46 cmt. c and concluding for similar reasons that Ohio courts would be likely to follow the Third Restatement).

Notwithstanding the trend toward treating the right of publicity as a commercial property right, HUJ contends that the right of publicity is a deeply personal right. It is true that one of the rationales for recognizing a right of publicity remains its protection of "an individual's interest in personal dignity and autonomy." Restatement (Third) of Unfair Competition § 46 cmt. c. Surely, however, the personal interest that is at stake becomes attenuated after the personality dies.

A maximum 50-year postmortem duration here would be a reasonable middle ground that is long enough for a deceased celebrity's heirs to take advantage of and reap the benefit of the personal aspects of the right. *See* Restatement (Third) of Unfair Competition § 46 cmt. h ("As a general matter, however, the dignitary and proprietary interests that support the recognition of a right of publicity become substantially attenuated after death. Postmortem uses are also less likely to create a false suggestion of endorsement or sponsorship."). The obviously humorous ad for the 2010 Terrain having been published 55 years or more after Einstein's death, it is unlikely that any viewer of it could reasonably infer that Einstein or whoever succeeded to any right of publicity that Einstein may have had was endorsing the GMC Terrain.

**2. Copyright Law Considerations**

HUJ argues that, if the Court must set a limit on the postmortem right of publicity, it should be coterminus with the current federal Copyright Act, which protects copyrights for 70 years after death. *See* 17 U.S.C. § 302. This Court disagrees. The purpose of the right and its underlying policies do not warrant a mechanical application of the Copyright Act's term of life plus 70 years. Indeed, although McCarthy ultimately recognizes that using the federal Copyright Act as a model will "[m]ore often than not . . . provide the tie-breaking solution to the problem" of determining the postmortem duration of the right of publicity, *McCarthy*, § 9:16, it is clear that such an analogy is inconsistent with McCarthy's own views about the purpose and policies underlying the right. In fact, he

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 8 of 16

would prefer to limit the extent of the right to 10-20 years after death, despite noting that other commentators have proposed longer durations, including a life-plus-50-year term modeled after the former version of the federal Copyright Act. *Id.*

The current 70-year postmortem term was enacted by the 1998 Copyright Term Extension Act, which increased the length of copyright protection from its former duration of life plus 50 years. *See Eldred*, 537 U.S. at 193. HUJ acquired Einstein's right of publicity in 1982, *Hebrew Univ. of Jerusalem*, 2012 WL 907497, at *3, at which time the 1976 Copyright Act was in place—with a 50-year postmortem duration. *See Eldred v. Ashcroft*, 537 U.S. 186, 193 (2003). HUJ's reasonable expectation at that time, based on the same theory of analogy to copyright that it advocates today, necessarily would have been that any rights it acquired would not last more than 50 years after Einstein's death. Similarly, when the *Presley* court suggested that the New Jersey Legislature consider the Copyright Act as a guide in setting a postmortem duration for the right of publicity, that statute had only a life-plus-50-year duration. *See Estate of Presley*, 513 F. Supp. at 1355 n.10. This was approximately one year before HUJ acquired its interest.

There are certain similarities between the goals of copyright and those of the right of publicity. In a sense, both rights evolve from an act of creation, whether it is the creation of a "work" such as a writing or the creation of a cultivated persona. These acts of creation are the product of an individual's choices and self-expression. Some courts, accordingly, have analogized between copyright and the right of publicity in the context of balancing the interests protected by those rights with the interests protected under the First Amendment. *See, e.g.*, *Hart*, 808 F. Supp. 2d at 776-77 (noting the "common underlying principles shared by the right of publicity and copyright doctrine"); *Estate of Presley*, 513 F. Supp. at 1359 n.21 (describing Elvis's likeness as an "original work"); *see also Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 399 (Cal. 2001) ("The right of publicity, like copyright, protects a form of intellectual property that society deems to have some social utility. Often considerable money, time and energy are needed to develop one's prominence in a particular field. . . . For some, the investment may eventually create considerable commercial value in one's identity."); *Zacchini*, 433 U.S. at 576 (noting that a state's interest in protecting the right of publicity "is closely analogous to the goals of patent and copyright law, focusing on the right of the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

individual to reap the reward of his endeavors and having little to do with protecting feelings or reputation").

Despite the intersecting similarities between copyright and the right of publicity, however, that the right of publicity is an outgrowth of the right of privacy suggests that the term of copyright protection is far from a perfect precedent for determining the duration of the right of publicity. First, as HUJ itself has argued, the right of publicity is an intensely personal right meant, to some extent, to protect against personal and dignitary harms, such as having one's persona associated with a product or idea of which he disapproves. *See* Restatement (Third) of Unfair Competition § 46 cmt. c. Thus, "the focus of copyright is on recorded creative expressions while the focus of the right of publicity is on the identity and 'persona' of a human being." *McCarthy*, § 5:45; *see also* Restatement (Third) of Unfair Competition § 46 cmt. i ("[T]he subject matter of the right of publicity generally lies outside the scope of copyright. Moreover, the protection afforded by the right of publicity against the exploitation of a person's identity for purposes of trade is not ordinarily 'equivalent' to the rights against reproduction, distribution, performance, and display recognized under copyright.").

Moreover, the protection of copyright is designed to encourage the future creation of works of art, whereas the interest sought to be protected by the right of publicity is usually the byproduct of a different and earlier endeavor. "The commercial value of a person's identity often results from success in endeavors such as entertainment or sports that offer their own substantial rewards. Any additional incentive attributable to the right of publicity may have only marginal significance." Restatement (Third) of Unfair Competition § 46 cmt. c. For this reason, it is questionable whether those interests should be protected for as long a period after the death of the person to whom they belong as are his copyrighted works.

Finally, among the reasons for Congress's 1998 extension of the federal Copyright Act to protect works for life plus 70 years (increased from life plus 50 years) were the desire to harmonize U.S. copyright protection with the protection afforded by countries in the European Union, *see Eldred*, 537 U.S. at 205-06, and, arguably, to promote the interests of the American entertainment industry, *see id.* at 262 (Breyer, J., dissenting). These political and economic considerations are distinct from those policies underlying

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 10 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

copyright protection that also support a right of publicity. As such, they point away from a mechanical application of the extremely lengthy, 70-year postmortem duration of copyright to the right of publicity.

### D. Other States' Laws

#### 1. Common Law

Looking beyond New Jersey, in none of the five other states that recognize a common law postmortem right of publicity has any court addressed the issue of the right's duration, or even raised it as a question needing to be answered. *See, e.g.*, *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 684 S.E.2d 756, 758 (S.C. 2009) (South Carolina); *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 304-06 (6th Cir. 2001) (Michigan); *Jim Henson Prods., Inc. v. John T. Brady & Assocs., Inc.*, 867 F. Supp. 175 (S.D.N.Y. 1994) (Connecticut); *Nature's Way Prods., Inc. v. Nature-Pharma, Inc.*, 736 F.Supp. 245, 247 (D. Utah 1990) (Utah); *Martin Luther King, Jr., Ctr. for Social Change, Inc. v. Am. Heritage Prods., Inc.*, 296 S.E.2d 697, 698 (Ga. 1982) (Georgia). In none of those cases, however, was the interval between the death of the person whose right of publicity was at stake and the date of the alleged infringement of that right 50 years or longer. Indeed, in most of the cases the period was 10 years or less. *See, e.g.*, *Gignilliat*, 684 S.E.2d at 758 (maximum of 7 years at issue); *Jim Henson Prods., Inc.*, 867 F. Supp. 175 (maximum of 4 years at issue); *Nature's Way Prods., Inc.*, 736 F.Supp. at 247(maximum of 7 years at issue); *see also Estate of Presley*, 513 F. Supp. at 1355 (permitting right of publicity claim brought three years after Elvis's death).

#### 2. Statutes

The majority of states with statutory rights of publicity limit the right's postmortem duration to 50 years or less. Seven states have statutory rights of publicity that permit the right to endure for up to 50 years. *See* Fla. Stat. Ann. § 540.08 (Florida; 40 years); 765 Ill. Comp. Stat. § 1075/30 (Illinois; 50 years); Ky. Rev. Stat. § 391.170 (Kentucky; 50 years): Nev. Rev. Stat. § 597.790 (Nevada; 50 years); 42 Pa. C.S.A. § 8316 (Pennsylvania; 30 years); Tex. Prop. Code Ann. § 26.012 (Texas; 50 years); Va. Code Ann. § 8.01-40 (Virginia; 20 years).

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 11 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
| --- | --- | --- | --- |
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

Six states allow the postmortem right of publicity to reach 60 years or more. *See* Cal. Civ. Code § 3344.1 (California; 70 years); Ind. Code Ann. § 32-36-1-8 (Indiana; 100 years); Ohio Rev. Code Ann. § 2741.02 (Ohio; 60 years): 12 Okla. Stat. Ann. § 1448 (Oklahoma; 100 years); *see also* Tenn. Code Ann. §§ 47-25-1102 to -1104 (Tennessee; indefinite as long as the persona has commercial value); Wash. Rev. Code Ann. §§ 63.60.010 to 63.60.040 (Washington; 75 years when the persona has commercial value).[6]

Of the states whose statutes were enacted prior to the revision of the Copyright Act in 1998, only California amended its statute to reflect the extended copyright term. *See* California Assembly Committee on Judiciary, SB 209 (March 3, 1999) (noting the California Assembly's express intent to conform its right of publicity statute to the amended federal Copyright Act).

Thus, of the states with currently enacted statutory rights of publicity, a slight majority limits the duration of that right to 50 years or less. Although this does not provide overwhelming support for such a length of time, it does tip the balance slightly in that direction.

### E. Public Policy Counsels in Favor of Limiting the Postmortem Right of Publicity to Not More Than 50 Years

One of the overarching policy concerns in enforcing intellectual property rights is the balance that must be struck between protecting an individual's right to reap the benefits of his creative endeavors and the public's freedom of expression. *See White v. Samsung Elecs. Am., Inc.*, 989 F.2d 1512, 1519 (9th Cir. 1993) (Kozinski, J., dissenting) ("[I]ntellectual property law is full of careful balances between what's set aside for the owner and what's left in the public domain . . . ."). This policy concern extends to the right of publicity. *See id.*; *Hart*, 808 F. Supp. 2d at 774 (noting that "it is clear that the

[6] One state, Nebraska, has a statutory postmortem right of publicity that does not appear to establish a duration. *See* Neb. Rev. Stat. §§ 20-202, 20-208. Additionally, the Massachusetts Legislature is currently considering a bill that would create a statutory postmortem right of publicity in that state with a duration of life plus 70 years. *See* Mass. Bill S.2382; Leon Neyfakh, *Life, the Aftermarket*, Boston Globe, Aug. 19, 2012, at K1.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 12 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

right of publicity may encroach upon First Amendment rights" and discussing the various balancing tests used by courts to weigh those rights); Restatement (Third) of Unfair Competition § 47 cmt. c ("The right of publicity as recognized by statute and common law is fundamentally constrained by the public and constitutional interest in freedom of expression.").

An open-ended right of publicity, or even a postmortem duration longer than 50 years, raises considerable First Amendment concerns and creates a potentially infinite curb on expression. *See White*, 989 F.2d at 1513 (Kozinski, J., dissenting) ("Overprotecting intellectual property is as harmful as underprotecting it. Creativity is impossible without a rich public domain. . . . Overprotection stifles the very creative forces it's supposed to nurture."); *Comedy III Prods.*, 25 Cal. 4th at 397 ("[T]he very importance of celebrities in society means that the right of publicity has the potential of censoring significant expression by suppressing alternative versions of celebrity images that are iconoclastic, irreverent, or otherwise attempt to redefine the celebrity's meaning."). Additionally, as the Ninth Circuit recently noted, an extended right of publicity may interfere with or decrease the value of copyrighted works, such as photographs, thereby pitting one form of protected property against another. *See Milton H. Greene Archives*, 692 F.3d at 1000.

New Jersey courts' treatment of the First Amendment implications of the right of publicity is indicative of how that state's highest court might decide the issue of the right's duration. Many of those courts have applied a balancing test in their efforts to protect First Amendment values while determining the reach of the right of publicity. *See Hart*, 808 F. Supp. 2d at 767, 774-776 (collecting New Jersey cases, but noting, however, that "the Supreme Court in *Zacchini*, the only Supreme Court case addressing a First Amendment defense to the right of publicity did *not* engage in a balancing of the competing interests"); *Tellado*, 643 F. Supp. at 908-09 (collecting New Jersey cases); *see also G.D. v. Kenny*, 15 A.3d 300, 321-22 (N.J. 2011) (denying claim for misappropriation of name and image based on First Amendment protection of political, as opposed to

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 13 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

commercial, speech);[7] Elga A. Goodman, et al., 49 N.J. Prac., Business Law Deskbook § 16:3 (2011-2012 ed.) ("New Jersey recognizes a robust First Amendment constitutional defense to right of publicity claims."). Given that lower New Jersey courts apply a balancing test to the treatment of the First Amendment interests implicated by the right of publicity, it is likely that the New Jersey Supreme Court would perceive pitfalls in allowing an unlimited or lengthy term to the right of publicity, and that it would be likely to strike a similar balance if confronted with the question of the postmortem duration of that right.

In addition to First Amendment implications, there is another consideration. In the 57 years since Albert Einstein died, the means of communication have increased and so has the proclivity of people to use them frequently. Journalists, academics and politicians frequently issue pronouncements about the impact on society, both in the United States and around the globe, of the dizzying explosion in the tools of communication. New devices and platforms have been developed, including smart phones, personal computers, social networks, email, Twitter, blogs, etc. These technologies have caused a swift and dramatic, but still developing, impact on ordinary life. It has become a truism that their speed, their accessibility, and their popularity appear to have changed social norms regarding privacy and public expression. But it is not yet clear what this should mean for the protection of such rights as the right of privacy, the right of expression and the right of publicity. For example, on balance should the law increasingly protect people's right of expression, now that we enjoy so many fora in which to broadcast our views? Similarly, should the law value the right of privacy *less* than before, given that many social media devotees, especially young people, are said to have little compunction about revealing intimate information about themselves? Conversely, should the law afford celebrities greater rights in controlling publicity about themselves, to protect against what appears to be a growing tendency of people to not just exalt but even to exploit the fame and celebrity of others?

The Court does not profess to have answers to these questions, but what is clear is

---

[7] It is nevertheless indisputable that commercial speech—like GM's ad here—also is protected to some extent by the First Amendment. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561-62 (1980).

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 14 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

that since the full impact of these rapid changes remains uncertain, it would be imprudent to issue any ruling that strengthens (or at least lengthens) one right—that of the right of publicity—to the potentially significant detriment of these other rights.

## V. Conclusion

Absent a legislative directive to the contrary, to extend the right of publicity beyond a half century would be inconsistent with the Court's responsibility to balance all of the interests that are at stake. It also would risk having that right treated as an open-ended heredity right. *See McCarthy*, § 9:16 (noting the need "to avoid descendants or heirs unto the nth generation reaping the commercial rewards of a distant and famous ancestor, a 'favored bloodline' concept out of step with a society that has abolished hereditary titles" and that at some point, the interests of free speech outweigh the interests of the heirs and "the person's identity should enter the public domain as a part of history and folklore").

A maximum duration of 50 years appropriately reflects the balance between meaningful enforcement of the right of publicity after a famous individual's death and the public's interest in free expression. It aligns with the majority of current state statutes limiting the right's postmortem duration. And it approximates the period evidently contemplated by the *Presley* court—the one court in New Jersey to have discussed the duration of the right—when it encouraged that state's legislature to consider the issue with guidance from the then-current Copyright Act.

The Ninth Circuit recently noted that Marilyn Monroe considered herself to belong "to the Public and to the world." *Milton H. Greene Archives*, 692 F.3d at 1000. There is no evidence that Albert Einstein saw himself that way, but he did become the symbol and embodiment of genius. His persona has become thoroughly ingrained in our cultural heritage. Now, nearly 60 years after his death, that persona should be freely available to those who seek to appropriate it as part of their own expression, even in tasteless ads.

Accordingly, the Court DENIES HUJ's motion and rules that under New Jersey law, 2005 was the last year during which HUJ could sue to enforce any right of publicity that it might have inherited from Albert Einstein. Because this case was not filed until

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 15 of 16

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV10-03790 AHM (JCx) | Date | October 15, 2012 |
|---|---|---|---|
| Title | THE HEBREW UNIVERSITY OF JERUSALEM v. GENERAL MOTORS LLC | | |

2010, HUJ is not entitled to pursue it further. There will be no trial.

By not later than October 22, 2012, GM must file a “[Proposed] Judgment” in accordance with this ruling.

:

Initials of Preparer SMO